316 S.W.3d 279 (2010)
COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Appellant,
v.
Honorable A.C. McKay CHAUVIN, Judge, Jefferson Circuit Court and Matthew Baumler; and Christopher Warner (Real Parties in Interest), Appellees.
No. 2008-SC-000509-MR.
Supreme Court of Kentucky.
June 17, 2010.
*281 Ronald W. Crawford, Cabinet for Health & Family Services, Frankfort, KY, for appellant.
Arch Cox McKay Chauvin, Judge, Jefferson Circuit Court, Louisville, KY, for appellee.
William Philip Koehler, III, Louisville, KY, for Matthew Baumler, Real Party in Interest.
*282 Kenneth P. O'Brien, Sewell and Associates, Louisville, KY, for Christopher Warner, Real Party in Interest.
Jack Conway, Attorney General, Ryan M. Halloran, Jennifer B. Hans, Tad Thomas, Assistant Attorneys General, Office of the Attorney General, Frankfort, KY, for Amicus Curiae, Commonwealth of Kentucky, Office of the Attorney General.
Gerald R. Toner, O'Bryan, Brown & Toner, PLLC, Louisville, KY, for Amicus Curiae, Kentucky Defense Counsel.
Opinion of the Court by Justice NOBLE.
Appellant, the Commonwealth of Kentucky, Cabinet for Health and Family Services, appeals to this Court from an order of the Court of Appeals denying in part and granting in part its petition for a writ of prohibition. For the reasons set forth below, the order of the Court of Appeals is reversed, and the case is remanded with instructions to grant the writ in full as requested by the Cabinet.

I. Background
This case began with a discovery request by Christopher Warner, a defendant in a civil suit at the circuit court. Warner sought discovery of a Kentucky All-Schedule Prescription Electronic Reporting (KASPER) record on the plaintiff in the suit, Matthew Baumler. These records are held by the Cabinet for Health and Family Services, which compiles them pursuant to KRS 218A.202. Subsection (6) of that statute says that these records may be disclosed "only ... to persons and entities authorized to receive that data under this section," and that "[disclosure to any other person or entity ... is prohibited unless specifically authorized by this section." Civil litigants are not authorized persons under the statute, nor are their attorneys.
The circuit court saw a conflict between this subsection, which prohibits disclosure, and CR 26.02(1), which allows discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The court resolved this apparent conflict by ruling, via interlocutory order, that the statute violated the separation of powers doctrine in sections 27 and 28 of the Kentucky Constitution, in that it affected practice and procedure of the courts, which falls within the exclusive rulemaking power of this Court, Ky. Const. § 116. After finding that Warner showed good cause that the record was discoverable, the court ordered that Baumler's record be conditionally released to Warner's attorney, despite the statutory prohibition.
Appellant sought a writ of prohibition at the Court of Appeals to bar enforcement of the order to disclose the materials. The Court of Appeals denied the writ requested by the Cabinet, agreeing with the circuit court that the records must be released because the statute violated the separation of powers doctrine. However, the Court of Appeals granted a writ in part, albeit not the one the Cabinet requested, requiring the circuit court to first conduct an in camera review to determine what parts of the records, if any, were relevant discovery material before allowing any disclosure to the parties.
The Cabinet now appeals to this Court as a matter of right. Ky. Const. § 115.

II. Analysis

A. Availability of the Writ
"[W]rits of prohibition ... are extraordinary in nature, and the courts of this Commonwealth `have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" Kentucky Employers Mut. Ins. v. Coleman, *283 236 S.W.3d 9, 12 (Ky.2007) (quoting Bender v. Eaton, 343 S.W.2d 799, 800 (Ky. 1961)). This Court has said that "[extraordinary writs are disfavored, but may be appropriate when a lower court is acting without jurisdiction or acting erroneously within its jurisdiction." Buckley v. Wilson, 177 S.W.3d 778, 780 (Ky.2005).
The issue here is not whether the circuit court had jurisdiction to rule on the constitutionality of KRS 218A.202(6) or to enter a discovery order; it clearly did. Indeed, the Cabinet does not allege lack of jurisdiction. Rather, this case falls under the second class of writs, and so the question is whether the court acted erroneously within its jurisdiction by allowing discovery of the materials.
To effectuate the policy of granting writs in only extraordinary circumstances, a petitioner claiming that the trial court is acting erroneously within its jurisdiction must show that great and irreparable harm will result, and that there would be no adequate remedy by appeal. Hoskins v. Maricle, 150 S.W.3d 1, 10 (Ky. 2004). This test determines whether the remedy of a writ is even available, and only if a petitioner satisfies this test will we turn to the merits. Bender, 343 S.W.2d at 801. In applying this threshold test, the petitioner's allegations are assumed to be true. Thus, the Court assumes here that the statute creates a privilege, and that the circuit court's order breaches that privilege.
Applying the test to these facts, "[t]here is no adequate remedy by appeal because privileged information cannot be recalled once it has been disclosed." St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771, 775 (Ky.2005); accord Bender, 343 S.W.2d at 802 ("Once the information is furnished it cannot be recalled.... The injury suffered by petitioners, assuming their adversaries have no right to this disclosure under the Civil Rules, will be complete upon compliance with the order and such injury could not thereafter be rectified .... Petitioners have no other adequate remedy.").
As to the second requirement, however, a breach of privilege is usually an insufficient showing of harm, at least under the strict terms of the standard, because the breach is not "a ruinous injury." St. Luke Hosps., 160 S.W.3d at 775; accord Bender, 343 S.W.2d at 802. Nevertheless, "[w]e have previously held that extraordinary relief is warranted to prevent disclosure of privileged documents." St. Luke Hosps., 160 S.W.3d at 775; accord McMurry v. Eckert, 833 S.W.2d 828, 830 (Ky.1992); Bender, 343 S.W.2d at 802-03. This Court has done so under a narrow exception to the harm requirement, namely, the "certain special cases" exception where the writ can be granted "in the absence of a showing of specific great and irreparable injury ... provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." Bender, 343 S.W.2d at 801. The violation of a privilege is such a case. Id. at 802 (stating, regarding a privilege, that "in a certain class of cases, of which this is one, the showing of such grievous injury is not an absolute necessity"); see also Grange Mut. Ins. Co. v. Trude, 151 S.W.3d 803, 808 (Ky.2004) (noting that a writ is proper to stop the "breaching [of] a tightly guarded privilege").
Thus, because the Cabinet has alleged that the circuit court's order will violate a privilege, a writ of prohibition is available as a remedy. Having established that the remedy is available, in part by concluding that the "certain special cases" exception *284 to the harm requirement applies, this Court may now turn to the merits of the issues presented. Bender, 343 S.W.2d at 802.

B. Separation of Powers and Statutory Privileges
The issue presented by the Cabinet is whether, in light of KRS 218A.202(6), a trial court can order discovery of a KASPER report in a civil case. The Cabinet argues that the statute creates a privilege which bars such discovery. Warner argues that the statute is void as a violation of the separation of powers doctrine in the Kentucky Constitution because it affects practice and procedure of the Court of Justice, and that the statute does not create a privilege.
Before addressing these arguments, it is worth noting that, under the civil rules, privileged material is not subject to discovery, regardless of the source of the privilege. CR 26.02(1) says that a trial court shall allow discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." (Emphasis added.) The rule, by its own terms, does not permit discovery of privileged matters. KRE 501 says that privileges can be granted by the Constitution, rules promulgated by this Court, or by statute. Thus, Kentucky rules allow for the creation of statutory privileges. To the extent that the KASPER statute creates a privilege, there is no conflict with the rules. The circuit court erred in finding such a conflict.
This, of course, does not resolve the issue, because the statute could still violate the constitution or not actually create a privilege. Turning to those issues, this Court concludes that the legislature has the power to create privileges, both under our rules and as part of its inherent power to enact substantive law, and that the statute indeed creates a privilege.
Kentucky evidentiary rules recognize the ability of the legislature to control their contents, presumably including privileges, limited only by section 116 of the Kentucky Constitution. For example, this Court must report rule amendments to the legislature, which may then disapprove the rules or by inaction allow them to become effective. KRE 1102(a). In addition, the legislature "may amend any proposal reported by the Supreme Court," and it "may adopt amendments or additions to the Kentucky Rules of Evidence not reported" to them. KRE 1102(b).
More importantly, the legislature has the inherent power to create privileges, as part of its power to enact substantive law. In fact, it has exercised this power many times outside of the Rules of Evidence.[1] *285 The Kentucky Constitution specifically articulates the doctrine of separation of powers, see Ky. Const. §§ 27-28, under which the legislature has the exclusive authority to enact substantive law, see Ky. Const. § 29; Elk Horn Coal Corp. v. Cheyenne Res., Inc., 163 S.W.3d 408, 422 & n. 68 (Ky.2005), whereas this Court has the exclusive authority to enact "rules of practice and procedure for the Court of Justice," see Ky. Const. § 116; Elk Horn, 163 S.W.3d at 423 & n. 69. It follows, therefore, that if the privilege conferred by the KASPER statute is substantive law rather than a rule of practice or procedure, it does not violate the separation of powers doctrine.
The way the Kentucky Rules of Evidence were enacted avoided determining whether privileges are substantive or procedural. The rules were passed by the legislature, see 1990 Ky. Acts ch. 88; 1992 Ky. Acts ch. 324, and this Court adopted them to the extent that they may have constituted a rule of practice or procedure, see Order, Kentucky Supreme Court, May 12, 1992 (on file with the Clerk of the Court). This Court characterized the adoption of the rules as a "joint effort," Mullins v. Commonwealth, 956 S.W.2d 210, 211 (Ky.1997), a polite fiction which recognized that some parts of the rules fell within the sole purview of the legislature (substantive law), whereas others fell within the sole purview of this Court (practice and procedure), but avoided fighting over which was which. This was valuable because deciding which branch has the power to pass a given rule is rarely easy, see generally Robert G. Lawson, Modifying the Kentucky Rules of EvidenceA Separation of Powers Issue, 88 Ky. L.J. 525 (2000), and is an issue of constitutional magnitude, see Ky. Const. § 28 (forbidding any branch from "exercis[ing] any power properly belonging to either of the others"). Because of this polite fiction, this Court has rarely needed to speak authoritatively on the subject. Doing so in this case, however, is necessary.
Privileges are ultimately substantive law, at least those that apply outside the courtroom. Although "the bulk of our evidence rules are indeed procedural, fall within the exclusive rulemaking authority of the Kentucky Supreme Court, and may not be amended by independent action of the General Assembly," Lawson, supra, at 572, privileges are not normal evidentiary rules. They "are unique." Id. at 576. "In separating evidence law into substance and procedure, the best scholars draw a distinction between rules that predominantly foster accuracy in fact-finding and rules that predominantly foster other objectives. They classify the latter as substantive and place privileges in that category." Id. at 580. The disclosure restrictions in the KASPER statute fall into this second category: they foster objectives other than fact-finding, namely, protecting privacy given the confidential and sensitive nature of the records; limiting the effort and expense of providing discovery at will that can be obtained from other sources; and fostering the legislative purpose of collecting drug prescription data to use to combat doctor shopping, and thus to ultimately combat drug abuse and addiction. The statutory restriction on disclosure of KASPER records fosters these objectives, and it obviously applies outside of the courtroom, unlike a rule of practice or procedure would.
*286 It has long been assumed that the legislature has the power to create privileges. In fact, "[t]he General Assembly has exercised authority over privileges rules for at least several decades." Lawson, supra, at 580. When Kentucky reformed its evidence law, various privilegesincluding the spousal privilege, the religious privilege, and the psychiatrist-patient privilegewere creatures of statute, and their validity is not in doubt. Id. "The fact that most pre-Rules privileges existed in statutes indicates legislative authority to make privileges." Robert G. Lawson, Kentucky Evidence Law Handbook § 5.00[2], at 330 (4th ed. 2004). Although it is true that the Court rightfully "la[ys] claim to exclusive authority over matters of `practice and procedure'" under the Kentucky Constitution, it is quite notable "that the court has had hundreds of opportunities to claim exclusive authority over privileges and has never made even a slight movement in that direction." Id.
The Court has addressed this issue in only a few cases, but they all show respect for the legislature's power to make privileges. The first case was Mullins v. Commonwealth, 956 S.W.2d 210 (Ky.1997). In Mullins, the Court addressed whether the legislature unconstitutionally encroached on the Court's rulemaking power by creating an exception to the spousal privilege in child abuse cases. This Court upheld the statute, stating: "We find no constitutional or procedural fault with the legislation." Id. at 211. Although the Court did not directly say that privileges were substantive law, "its decision and observations seem to chart a course toward the position" and "recognize a most substantial role for the General Assembly in the definition of evidentiary privileges." Lawson, Modifying the Kentucky Rules of Evidence, supra, at 580.
Since Mullins, this Court has continued to recognize the validity of statutory privileges. The next case after Mullins, Sisters of Charity Health Systems., Inc. v. Raikes, 984 S.W.2d 464, 468 (Ky.1998), concerned a privilege for peer review material in medical malpractice suits. This Court upheld the privilege, but decided that because the statute was enacted before the Rules of Evidence, the case did not raise "the issue of whether a statutory privilege enacted after the effective date of the KRE violates the Court's rule making authority under KRE 1102." Id. at 468 n. 3. However, the timing is irrelevant; the exclusive power of this Court over rules of practice and procedure has long been recognized, even before the 1976 Judicial Article. Either the statutory privilege encroached on this Court's exclusive power or it did not. In Raikes the Court concluded that it did not.
The matter was clarified in Manns v. Commonwealth, 80 S.W.3d 439 (Ky.2002). In Manns, the Court discussed a statutory provision creating a privilege for juvenile records. Id. at 444. The Court noted that "[t]he confidentiality afforded to juvenile records was created by the legislature, KRS 610.340(1), not the judiciary," id., but did not strike down the provision. However, in the same case, the Court struck down another statutory provision, which mandated that trial courts admit certain impeachment evidence, because that law purported to amend a rule which was "procedural in the purest sense." Id. at 446. The Manns case thus follows the scholarly consensus: rules that "predominantly foster accuracy in fact-finding" by affecting what happens inside a courtroom (such as mandatory admissibility of impeachment evidence) are procedural and within the exclusive authority of the Court; however, those that "predominantly foster other objectives" and have an out-of-court effect (such as keeping juvenile records confidential *287 due to privacy concerns) are substantive and within the power of the legislature. Lawson, Modifying the Kentucky Rules of Evidence, supra, at 580. Given that the KASPER statute fosters a similar privacy objective and has a similar out-of-court effect to the statute as in Manns, that case supports the holding here that the statutory grant of privilege in KASPER is substantive and does not encroach on the Court's powers over practice and procedure.
This Court disagrees with the Court of Appeals that the legislature showed no intent to create a privilege when it prohibited disclosure of KASPER records. The essence of a privilege is to prohibit disclosure, and thus also discovery. The privileges in the Kentucky Rules of Evidence, with the exception of the husband-wife privilege, refer to the "[g]eneral rule of privilege," which is defined as the right "to refuse to disclose and to prevent any other person from disclosing" the privileged information.[2] KRE 503(b), 505(b), 506(b), 507(b); see also KRE 508(a). This is precisely what the KASPER statute does: it expressly prohibits "[disclosure to any person or entity ... unless specifically authorized by this section," including "disclosure in the context of a civil action where the disclosure is sought either for the purpose of discovery or for evidence." KRS 218A.202(6).
Although the intent of the legislature certainly would have been more perfectly expressed if the statute specifically described the prohibition on disclosure as a "privilege," this Court does not generally require statutes to use magic words. See, e.g., Commonwealth ex rel. Conway v. Thompson, 300 S.W.3d 152, 166-67 & n. 41 (Ky.2009). This Court cannot meaningfully distinguish this grant of privilege from many others the courts have long recognized and applied in civil cases, including the clergy-penitent privilege, KRE 505; the counselor-client privilege, KRE 506; and the psychotherapist-patient privilege, KRE 507in addition to the many other statutory privileges. The KASPER statute prohibits disclosure and discovery, just as any privilege would.
This Court also disagrees with the Court of Appeals that the exceptions to the prohibition on disclosure raise doubts about the legislature's intent to create a privilege. Most privileges in the rules of evidence also include exceptions. See KRE 503(d) (listing five exceptions to the attorney-client privilege); KRE 506(d) (listing two exceptions to the counselor-client privilege); KRE 507(d) (listing three exceptions to the psychotherapist-patient privilege). Likewise, almost all statutory privileges include exceptions.[3] These privileges *288 should not be cast aside simply because they are not absolute by their own terms.
Likewise, it is no answer that KASPER cannot invoke a privilege because the right to refuse to disclose is held by the Commonwealth, not the person whose privacy is at stake. Our evidentiary rules include the confidential informant privilege, which is exercised not by the informant who seeks to keep his identity secret, but by "the public entity to which the information was furnished." KRE 508(b). This privilege, like all the others except the spousal privilege, refers to the "general rule of privilege," indicating that this privilege is the same as the others. Indeed, this Court has never doubted the validity of the confidential informant privilege on this basis.
The exceptions in the statute are rather limited and do not undermine the general prohibition on disclosure. For example, a pharmacist may receive a record only on a certification that it will be used "for the purpose of providing medical or pharmaceutical treatment to a bona fide current patient." KRS 218A.202(6)(e). As another example, peace officers may receive a record only if they are "engaged in a bona fide specific investigation involving a designated person," KRS 218A.202(6)(b), and they can only share records with other peace officers if the recipients could get the records on their own, and even then only if both officers document who received the records and when. Id.
Subsection (12) of the statute leaves no doubt that the legislature wanted the disclosure prohibitions to be taken seriously. Under that subsection, any intentional, unauthorized disclosure is a Class D felony for the first offense and Class C for each subsequent offense. (That a violation of the statute's disclosure prohibition is a criminal offense further underscores the statute's substantive nature.) In short, the legislature's intent to create a privilege in the statute is clear enough, and it obviously found the privilege to be important.
The only way to conclude that the legislature did not have the power to make a privilege here is if it is unconstitutional. As discussed above, the privilege is constitutional under the separation of powers doctrine because it is an enactment of substantive law. However, as this Court has recently held, the privilege may be unconstitutional as applied in some criminal cases. Cabinet v. Bartlett, 311 S.W.3d 224 (Ky.2010). This is because no statute can defeat a criminal defendant's constitutional rights to exculpatory evidence or to confront witnesses against him. See generally Commonwealth v. Barroso, 122 S.W.3d 554, 558-63 (Ky.2003). To summarize Bartlett, to the extent that the statute purports to prohibit the government from disclosing potentially exculpatory information in a criminal case, it would violate a criminal defendant's rights under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Section 11 of the Kentucky Constitution. Bartlett, 311 S.W.3d at 226-28. These constitutional rights must be vigorously protected by courts. However, as noted above, this applies only to certain discovery in criminal cases, and it does not require striking the entire statute down as unconstitutional.
As to civil matters, there is a lesser constitutional protection. Procedural due process in a civil case generally *289 requires only notice, an opportunity to be heard and to present evidence, an impartial tribunal, and a decision on the record for appeal. See generally Goldberg v. Kelly, 397 U.S. 254, 267-71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). There is no due process right to get all possible evidence in the civil context, which has long been shown by the use of evidentiary privileges, first at common law, then as codified by rule or statute. Consequently, unlike in the criminal context, no constitutional bar precludes courts from applying the KASPER privilege in civil disputes such as this one. In fact, if this Court were to ignore the statutory restrictions in KASPER, this Court would itself violate the separation of powers doctrine by ignoring a valid statutory grant of privilege, which is within the legislature's purview.
Last, it is worth noting that even if this Court were to find that KRS 218A.202 infringed on this Court's exclusive authority to promulgate rules of practice and procedure, the statute would nevertheless be entitled to comity. "It is not our disposition to be jealous or hypertechnical over the boundaries that separate our domain from that of the legislature." Ex parte Farley, 570 S.W.2d 617, 624 (Ky. 1978). Thus this Court accepts "reasonable encroachments" on our powers via the "rule of comity." Commonwealth v. Reneer, 734 S.W.2d 794, 797 (Ky.1987). Any alleged encroachment here would be reasonable. Despite the statute, parties to civil suits may still get information about a person's prescription drug history from more direct sources: physicians who prescribe drugs, pharmacists who dispense them, or from the drug recipient. What they cannot do is get the more convenient compilation of records the Cabinet has. The statute does not ultimately prevent a civil litigant from getting discovery of drug histories, nor does it ultimately prevent a court from deciding to admit the histories into evidence. This is reasonable.
As a final note, this Court must make it clear, however, that such information as that which falls under the KASPER privilege is no different than any other privileged material when it comes to the court's power and ability to obtain that material. The court always has the inherent authority to review any act of the legislature for constitutionality, and the content of materials or data produced based on a statute to determine whether an exception to a privilege applies. Here, however, there is no question that the material at issue is the very report made privileged by the statute, and as the parties admit, no exception applies. Thus there is no need for an in camera review in this case.

III. Conclusion
The legislature has the power to create privileges, such as to KASPER records, both from our own rules and from their inherent power to enact substantive law. Thus, the Court of Appeals erred in finding that the statute violated the separation of powers doctrine. The KASPER statute creates a privilege as to KASPER records, which the circuit court's discovery order would violate. For that reason, the order of the Court of Appeals is reversed and remanded, with instructions to issue the writ requested to bar enforcement of the circuit court's discovery order.
CUNNINGHAM, SCHRODER and VENTERS, JJ., concur.
SCOTT, J., concurs by separate opinion.
ABRAMSON, J., dissents by separate opinion in which MINTON, C.J., joins.
SCOTT, J., Concurring Opinion:
I concur with the majority's opinion reversing the Court of Appeals and granting *290 the Cabinet for Health and Family Services a writ protecting its KASPER data from discovery in civil actions.[1] Given the great need of today's society to combat the evils of "doctor shopping" and prescription drug abuse, both at a practitioner and patient-leveland balancing this need against the fact that the KASPER database is merely a mandatory partial compilation from otherwise existing medical and pharmaceutical records, the discovery of which is not in any way impeded by KASPERI, too, would uphold the validity of KRS 218A.202 under our long-established rule of accepting "reasonable encroachments" upon our powers via the "rule of comity." Commonwealth v. Reneer, 734 S.W.2d 794, 797 (Ky.1987) ("Although it is apparent that K.R.S. 532.055 constitutes an encroachment by the General Assembly upon the prerogatives of the Judiciary, it is, nevertheless, not an unreasonable encroachment if it can be accepted under the principles of comity."). Thus, I would grant the writ, as "the mere possibility of disclosure may impede development of the confidential [relationships and uses] necessary" for KASPER to attain its full promise. Jaffee v. Redmond, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). Moreover,
if the purpose of the privilege is to be served, the participants in the confidential [uses and relationships] "must be able to predict with some degree of certainty whether particular [divulgences] will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."
Id. at 18, 116 S.Ct. 1923 (quoting Upjohn Co. v. United States, 449 U.S. 383, 393, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).
In so doing, I recognize this Court's previous pronouncements that "[a]ny amendment to [the Rules of Evidence] must be in accordance with KRE § 1102. Therefore, a unilateral attempt to amend [any] rule is a nullity."[2]Manns v. Commonwealth, 80 S.W.3d 439, 446 (Ky.2002). "Nevertheless, it has not been the policy of this court to nullify as a matter of course all legislation which infringes to some extent upon a proper function of the judiciary." Reneer, 734 S.W.2d at 796. In fact, "[i]t is not our disposition to be jealous or *291 hypertechnical over the boundaries that separate our domain from that of the legislature," Ex parte Farley, 570 S.W.2d 617, 624 (Ky.1978), as "[w]e respect the legislative branch, and in the name of comity and common sense are glad [at times] to accept without cavil the application of its statutes pertaining to judicial matters...." Id.
"Inevitably, there is and always will be a gray area in which a line between the legislative prerogatives of the General Assembly and the rulemaking authority of the courts is not easy to draw. The policy of this court [then] is not to contest the propriety of legislation in [an] area to which we can accede through a wholesome comity." Ex parte Auditor of Public Accounts, 609 S.W.2d 682, 688 (Ky.1980). "`While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'" United States v. Nixon, 418 U.S. 683, 707, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (quoting Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring)). Thus, where constitutional, practical, and beneficial, we should act with comity for the public good.
In addition, "[a] public interest privilege inheres in certain official confidential information in the care and custody of governmental entities. This privilege permits appropriate parties to protect information from ordinary disclosure, as an exception to liberal discovery rubrics." In re World Trade Center Bombing Litigation, 93 N.Y.2d 1, 686 N.Y.S.2d 743, 709 N.E.2d 452, 455 (1999). "Specifically, the privilege envelops `confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.' The justification for the privilege is that the public interest might otherwise be harmed if extremely sensitive material were to lose this special shield of confidentiality." Id. at 456 (emphasis added) (citations omitted). "Whether the privilege attaches in a particular setting [such as a criminal matter] is[, at times,] a fact-specific determination for a fact-discretion weighing court, operating in camera, if necessary. The public interest, and what adds up to sufficient potential harm to it, [can be] inherently flexible concepts." Id. And, "`[o]nce it is shown that disclosure would be more harmful to the interests of the government than [nondisclosure would be to] the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure.'" Id. (citations omitted).
"Notably, [however,] a mere showing by a private litigant in a civil case that information sought would be helpful to secure `useful testimony' is not enough to override a demonstrated or manifest potential harm to the public good. Rather, a court must calibrate the need of a litigant for information with the government's duty to try to prevent similar occurrences and to maintain the public peace and welfare." Id. (citations omitted). The analysis may also "take into account the extent to which pertinent information is available to plaintiffs from other public sources...." Id.; see also Newsome v. Lowe, 699 S.W.2d 748, 752 (Ky.App.1985) ("Counsel for respondent quite candidly admitted at the oral argument on this petition that obtaining Dr. Nathanson's letter would possibly enable him to impeach Dr. Nathanson at trial. While this would qualify as a legitimate and worthy aim, we do not believe that it is a showing of a substantial need under the rule").
*292 Here, the Plaintiff, Baumler (real party in interest) sued the Defendant, Warner (also a real party in interest) seeking personal injury damages for Warner's alleged negligence in causing the automobile accident. In the process of discovery, Warner obtained records from several of Baumler's medical providers. These records indicated that Baumler (1) routinely ran out of his pain medication before his prescription was ready to be refilled, (2) claimed on at least two occasions that his medication had been stolen, (3) was discharged from the care of at least one physician for violating his pain management protocol, and (4) had a history of cocaine use.
The discovery quite candidly raises the issue of whether Baumler fabricated or exaggerated his injuries in order to obtain drugs, and whether Baumler has a predisposition to narcotic pain medications. Additionally, as explained in oral argument, Baumler's medical and health insurance records indicate that he has been treated by a number of physicians in addition to those disclosed by his interrogatories. This again presents the issue of whether all of Baumler's treating physicians have been correctly identified.
Warner then filed a motion to obtain a KASPER report from the Cabinet documenting Baumler's prescription drug history. The trial court granted the motion directing the disclosure by the Cabinet subject to the restrictions that such disclosure "may be used by counsel for litigation or claims for valuation purposes only and in connection with the trial of this matter and [is] not to be disclosed to anyone who is not involved in this litigation." The Cabinet then intervened and filed a motion to vacate the order on the ground that KRS 218A.202(6) prohibits the disclosure of KASPER reports "in the context of a civil action where the disclosure is sought either for the purpose of discovery or for evidence."
Warner responded with the argument before this court that subsection (6) of KRS 218A.202 violates the separation of powers provisions of the Kentucky Constitution, which assigns to this Court the power to describe the rules of practice and procedure for the Court of Justice. See Ky. Const. § 116 ("The Supreme Court shall have the power to prescribe rules governing ... rules of practice and procedure for the Court of Justice."). The privacy of prescription drug records being a matter of great public importance, the Attorney General sought intervention in support of the constitutionality of KRS 218A.202(6).
However, as aforementioned, KASPER is merely a partial compilation of mandatory reports from medical providers and pharmacists from existing patient medical and pharmacy records. The data collected by KASPER includes a patient identifier, the drug dispensed, the date of dispensing, the quantity dispensed, the prescriber, and the dispenser. KRS 218A.202(4). Pursuant to the statute, the Cabinet is authorized to provide KASPER data only to those persons or entities specifically authorized to receive that data by statute. KRS 218A.202(6); see also Williams v. Commonwealth, 213 S.W.3d 671, 683 (Ky. 2006) ("KASPER data is not available to the general public, but rather only to specified personnel who certify that they are conducting `a bona fide specific investigation involving a designated person.'"). Civil litigants, whether in personal injury, dissolution, or similar actions, are not authorized by the statute to access KASPER. In fact, the legislature made intentional disclosure a violation of the statute a Class D Felony for the first offense. KRS 218A.202(12).
*293 In allowing the discovery requested, the trial court found a conflict between its obligation to oversee discovery pursuant to CR 26.02(1) and the Cabinet's obligation to protect the confidentiality of KASPER records. CR 26.02(1) provides that a trial court shall permit discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Thus, for reasons that this Court now recognizes the privilege, there is no conflict between KASPER, KRS 218A.202, and CR 26.02(1).
In this respect, the facts of this case demonstrate that recognition of such a privilege will only minimally impact Warner's discovery, if at all. Warner has already discovered the medical, pharmaceutical, and health insurance records, creating an issue, or inference, as to whether Baumler fabricated or exaggerated his injuries in order to obtain drugs, or whether Baumler has a predisposition to narcotic pain medication. And Warner has already discovered through these same records a number of physicians with whom Baumler treated that were not disclosed by Baumler's answers to interrogatories.
Plainly, therefore, KRS 218A.202(b) does not interfere with Warner's traditional rights of discovery of medical, pharmaceutical, and health insurance records. In fact, KASPER is merely a compilation of entries reflected in these traditional records for all covered Kentucky medical providers and pharmacists. Noting that the accident occurred in Jefferson County, one must acknowledge that even KASPER would not answer Warner's questions regarding physicians and pharmacists who may have treated Baumler in Illinois, Indiana, or Ohio. Thus, even denying the privilege would not add the appreciable range of certainty Warner suggests.
Moreover, aside from the confidentiality and legal protection promised to the participating medical providers and pharmacists, the disclosure of the KASPER data, whether accurate or inaccurate, is such to cause, at times, embarrassment  all the more when totally disconnected from the medical treatment and records which document the prescription and need for treatment. This, itself, raises the likelihood of the ultimate inadmissibility of KASPER data. Nevertheless, should KASPER data become the "next great discovery tool," as advocated by Warner, for civil litigation, "the mere possibility of [such] disclosure may impede development of the confidential relationship necessary for [the underlying] treatment." Jaffee v. Redmond, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). It is clear that "an asserted privilege must also `serv[e] public ends.'" Id. at 11, 116 S.Ct. 1923 (quoting Upjohn, 449 U.S. at 389, 101 S.Ct. 677). Here, the purpose and promise of KASPER undoubtedly does just that: the eradication of "doctor shopping," prescription fraud, as well as attacking the prescription drug abuse crisis affecting Kentucky.
We must be mindful that the Kentucky General Assembly and other "state legislatures are fully aware of the need to protect the integrity of the factfinding functions of [the] courts," Jaffee, 518 U.S. at 13, 116 S.Ct. 1923, and that the privilege for KASPER data is necessary to both the public need and scheme of KRS 218A.202, as evidenced by the General Assembly's enactment and pronouncements. Thus, weighing the public benefit versus the detriment to private civil litigants, the balance must be struck for the public good, given that the detriment, if any, to civil litigants, as here, is miniscule: KASPER in no way affects or restricts any discovery of existing medical, pharmaceutical, and health insurance records.
*294 For these reasons, I concur with the majority on the privilege set out in KRS 218A.202 and the granting of the writ.
ABRAMSON, J., Dissenting:
I respectfully dissent. The writ action before us presents an important issue of governmental branch authority that transcends the mere question of the discoverability or admissibility of data maintained in the Kentucky All-Schedule Prescription Electronic Reporting (KASPER) system. As the majority correctly notes, the tension that has always existed in the area of evidentiary privilege between the judicial branch as the keeper of "practice and procedure" and the legislature as creator of substantive law remains even after the 1992 adoption of the Kentucky Rules of Evidence (KRE) through a cooperative effort of this Court and the Kentucky General Assembly. Today's majority opinion deems evidentiary privileges wholly substantive and hands the future of those important legal principles over to the unilateral action of the legislature. Professor Robert Lawson in his thought-provoking article, Modifying the Kentucky Rules of Evidence  A Separation of Powers Issue, 88 Ky. L.J. 525 (2000), contends that privileges are the subject of much scholarly debate but that the "better" analysis deems them substantive, as opposed to procedural, in nature. He then acknowledges that "should [the Kentucky Supreme Court] get to that destination [i.e., the conclusion that privileges are wholly substantive] the court would conclude that the provisions in Article V, [KRE] Rules 501 through 511, may be amended by independent actions of the General Assembly." Id. at 580-81. Thus, as we address the writ petition before us the overriding issue of the future development of evidentiary privileges looms large. I believe, as other courts have held, that certain evidentiary concepts and rules have both procedural and substantive elements and that the proper resolution of these difficult issues involves both the courts and the legislature, just as we wisely recognized in 1992 with the joint adoption of the KRE. With recognition of the far-reaching consequences of any principles regarding privileges articulated in this case, I turn to the specifics of the issue before us.

I. The KASPER System and the 2007 Amendment Regarding Civil Actions
In 1998, the General Assembly enacted House Bill 115, which, in pertinent part, established what has come to be known as the KASPER system, "an electronic system for monitoring Schedules II, III, IV, and V controlled substances" dispensed within the Commonwealth. The Bill's KASPER provisions have been codified at KRS 218A.202, and under that statute for each of the listed controlled substances dispensed, licensed medical practitioners and pharmacists are required to report to the Cabinet for Health and Family Services (Cabinet) the patient, the drug, the date of dispensing, the quantity, the prescriber, and the dispenser. The computerized database compiled from this information enables the Cabinet to identify persons prescribing, dispensing, or receiving what appear to be unusually large amounts of the controlled substances. The statute then further authorizes the Cabinet to provide that information in certain circumstances to licensing authorities, to practitioners, to peace officers, to grand juries, and to courts.[1]
*295 As originally enacted in 1998, the statute made clear that the KASPER data was to remain confidential. The Bill provided expressly that "[t]he data and any report obtained therefrom shall not be a public record," KRS 218A.202(8) (1998), and further deemed the knowing disclosure of data to unauthorized persons a class D felony. The original Bill did not, however, purport to remove KASPER data or records from the discovery provisions of either the civil or the criminal rules.
In 2007, the General Assembly amended KRS 218A.202. In pertinent part, Senate Bill 88 purported to prohibit disclosure of KASPER data to any unauthorized person or entity, "including disclosure in the context of a civil action where the disclosure is sought either for the purpose of discovery or for evidence." KRS 218A.202(6) (2007). This amendment, passed nine years after the adoption of the KASPER system, is the focus of the writ action before this Court.

II. The Underlying Case and the Writ Action
This writ action arose when the Cabinet objected to a discovery demand filed by Christopher Warner, a defendant in an action now pending in the Jefferson Circuit Court. The plaintiff in that action, *296 Matthew Baumler, seeks damages from Warner, for allegedly having injured him in a motor vehicle collision. In the course of discovery, Warner acquired evidence tending to show that Baumler has extensively used prescription pain medicine and has been discharged from the care of at least one physician for violating pain management protocols. Eyeing a possible defense that Baumler has made false or exaggerated claims in hopes of acquiring additional drugs, Warner sought Baumler's KASPER record as a likely source of additional, relevant evidence of Baumler's use and possible misuse of those drugs.
The Cabinet, as noted, resisted Warner's discovery request, but the trial court upheld it. In denying the Cabinet's motion to preclude the discovery of Baumler's KASPER record, the trial court ruled that Warner had made an adequate showing of relevance under CR 26 and rejected the General Assembly's 2007 amendment to the KASPER statute as an unconstitutional legislative encroachment upon a procedural matter lying within the judicial branch's exclusive control.
The Cabinet immediately sought a writ from the Court of Appeals to prohibit the discovery, but the Court of Appeals affirmed the trial court. It held that to the extent that the 2007 amendment of the KASPER statute purported to remove KASPER records from discovery in civil cases it violated the separation of powers provisions of Sections 27 and 28 of the Kentucky Constitution and Section 116's grant of exclusive control over matters of practice and procedure to the judicial branch. That court acknowledged, nevertheless, the confidential nature of the KASPER records, and ordered that before Baumler's records could be released to Warner, the trial court was to inspect them in camera and ensure that they did in fact contain relevant matter discoverable under the civil rules.

III. The 2007 Amendment Created a "Privilege"
This Court now reverses the Court of Appeals and grants the Cabinet a writ prohibiting any discovery of Baumler's KASPER record. To arrive at this result the Court begins by redefining the issue. Whereas the Court of Appeals saw the 2007 KASPER amendment as conflicting with the discovery rules, this Court notes, correctly, that Kentucky Rule of Civil Procedure (CR) 26, which defines the scope of discovery, expressly excludes from what is potentially discoverable matters that are privileged. The 2007 KASPER amendment precluding discovery of KASPER records created a privilege, the Court holds, and, thus, denying access to those records comports with CR 26. The question becomes not, as the Court of Appeals believed, whether the General Assembly has the authority to rewrite the discovery rules, but rather whether it has the authority to create a privilege exempting KASPER records from the reach of those rules. This reframing of the question, a preliminary matter with which I largely agree, relocates the separation of powers issue but does not solve it. We must now decide whether the purported KASPER privilege impermissibly encroaches upon our authority to make and oversee the rules of evidence, rules which, like the discovery rules, are generally regarded as procedural. Commonwealth v. Alexander, 5 S.W.3d 104, 106 (Ky.1999) ("The admissibility of evidence is governed by the Kentucky Rules of Evidence and is procedural in nature.").
The majority has decided that the KASPER privilege does not violate the separation of powers for essentially two reasons. First, according to the majority, KRE 501, *297 the general rule regarding privileges, confers upon the General Assembly an unfettered authority to create statutory privileges.[2] Second, and even more radically, the majority concludes that while the rules of evidence may in general be procedural, privileges are different, indeed unique, in that they are matters of substantive law. Privileges, therefore, fall exclusively within the General Assembly's constitutional bailiwick, and the KASPER privilege thus does not implicate separation of powers concerns at all. Needless to say, this latter conclusion turns on its head the traditional understanding in our law, as reflected in our evidence rules and our cases, that privileges are disfavored, that they are at least in significant part procedural, and that courts have authority to oversee them. In the majority's new world order, this tradition is jettisoned and authority to exempt from the duty to provide evidence or testimony is lodged exclusively in the General Assembly, subject only, apparently, to rational basis review. I profoundly disagree with this position.
To begin, I should note again that I do agree, although with some reservation, with the majority's refraining of the issue as one concerning the creation of a privilege. The Court of Appeals declined to view the issue that way on the ground that had the General Assembly intended to create a privilege it would have said so expressly.[3] Although the Court of Appeals is correct that courts should be grudgingly slow to read privileges into the law, I nevertheless agree with the majority that the 2007 amendment to the KASPER provision was meant to accord a privilege to KASPER records and reports. The KASPER materials had always been confidential, so the 2007 amendment must have been intended to add something beyond confidentiality. That something was the provision that KASPER data was not to be disclosed "when sought for" civil discovery or trial, and, as the majority correctly notes, the right to refuse and to prevent disclosure in that context is the essence of a privilege. The KASPER privilege, however, is unlike the lawyer-client, husband-wife, and other testimonial privileges in Article V of our Rules of Evidence, privileges that protect certain confidential communications between parties in special relationships. The only personal relationship remotely at issue in KASPER materials is the physician-patient relationship and the KASPER privilege does not, and clearly was not intended to, foster frank communication between physicians and patients. The KASPER data includes virtually none of what is communicated in that relationship, and the possibility that KASPER data might be subject to discovery is not at all likely to interfere with a physician-patient relationship.
As Justice Scott correctly notes in his concurrence, the KASPER privilege is *298 more like privileges other courts have recognized that protect official information. Even here, though, the likeness is quite limited. Like the traditional privileges, the official information privilege is most often applied to protect communications, either deliberative communications between government officials, or, as with the informant's privilege in our KRE 508, communications between the government and third parties. See Mark S. Wallace, Discovery of Government Documents and the Official Information Privilege, 76 Colum. L.Rev. 142 (1976). The KASPER privilege, on the other hand, does not foster internal decision making, nor does it encourage third parties to come forward with information. Indeed, there is no "official" information at all in the KASPER system which, in essence, is a database of non-privileged information available from other sources albeit no single source. At most, the KASPER privilege protects the privacy of those whose pharmacy records have been collected. This may be a legitimate governmental interest, but it is far from the vital interest that traditionally has been thought to justify the sort of absolute privilege the Cabinet claims and the majority has upheld. See, Developments in the Law  Privileged Communications, Part VI. Institutional Privileges, 98 Harvard L.Rev. 1592, n. 1 (1985). Thus, though I agree with the majority and Justice Scott that the 2007 KASPER amendment was intended to render KASPER records and reports privileged, I do not agree that that conclusion gets us very far, for we must still ask to what extent the privilege can be recognized consistently with the separation of powers, and, if recognized, how it is to be construed. I part company with my colleagues over those significant questions. As stated above, I do not agree that privileges are purely matters of substantive law outside this Court's authority to regulate practice and procedure and I do not agree that the General Assembly's unilateral enactment of this privilege was authorized by our KRE. Moreover, unlike Justice Scott, I do not agree that comity justifies our recognition of an absolute privilege for KASPER reports.

IV. Kentucky Case Law Does Not Support Allowing the Legislature Exclusive Control of Privileges As a Matter of Substantive Law
The majority purports to find support for its conclusion that "the legislature has the inherent power to create privileges, as part of its power to enact substantive law" in our cases. The cases it relies on, however, specifically, Mullins v. Commonwealth, 956 S.W.2d 210 (Ky.1997); Sisters of Charity Health Systems, Inc. v. Raikes, 984 S.W.2d 464 (Ky.1998); and Manns v. Commonwealth, 80 S.W.3d 439 (Ky.2002), in no way support or even suggest a conclusion that discovery and evidentiary privileges are substantive matters under the exclusive control of the General Assembly. On the contrary, in each of these cases this Court was confronted with statutes purporting to create or to modify an evidentiary rule or privilege  the spousal privilege in Mullins, a privilege for hospital peer-review materials in Sisters of Charity, and in Manns rules permitting the use of juvenile records at trial for certain purposes of impeachment and sentencing. In each of these cases, this Court either expressly held or strongly indicated that its authority over such matters was primary.
In Manns, we expressly held that amendments to KRS 532.055 purporting to establish the admissibility at trial of a defendant's juvenile record violated the separation of powers and invalidly encroached upon the Court's exclusive authority to oversee the rules of practice and procedure. We struck down a portion of *299 the statute as inconsistent with our rules concerning the impeachment of witnesses, and granted comity to a portion that was consistent with our rules under which the jury may be apprised at sentencing of a defendant's prior convictions. We noted in an aside that this latter portion of the statute altered nothing but the General Assembly's own prior legislation which makes juvenile records confidential, and thus provided no ground for withholding comity. The Court today latches on to that aside as somehow conferring authority on the General Assembly to govern privileges, but of course it does no such thing. The Manns Court was presented with no issue concerning the General Assembly's authority to create a privilege for juvenile records, and its holdings have nothing to do with that question. Manns, on the contrary, demonstrates that the rules of evidence, no less than the rules of procedure, are, for the most part at least, within the Court's Section 116 exclusive practice-and-procedure authority.
Mullins demonstrates the same point with express reference to privileges. In Mullins, we granted comity to KRS 620.050(2), which purported to abrogate the husband-wife privilege of KRE 504 in child abuse cases. Although the Court's separation of powers discussion is terse, to say the least, we explained that the constitutional problem was avoided because, properly understood, the privilege did not extend to child-abuse cases anyway. Given that the statute was thus consistent with the evidence rule, there was no reason to withhold comity. By invoking comity, however, the Court clearly indicated that KRS 620.050(2), and by extension privileges in general, are within the judicial practice-and-procedure preserve. The Mullins opinion does not "chart a course" toward abdicating our responsibility to oversee evidentiary privileges, and it is only by ignoring its comity holding that the Court today can say otherwise.
In Sisters of Charity, finally, the Court had before it KRS 311.377(2) which purported to create a discovery privilege for hospital peer-review records. No separation of powers issue was raised, and the Court expressly held that no other constitutional question need be addressed because even assuming the statute's validity it did not apply to the malpractice action in which it had been invoked. Further, the Court noted that because KRS 311.377(2) predated the rules of evidence, it did not implicate KRE 1102, the rule governing amendments to the KRE following their 1992 enactment. To be sure, the Court's discussion presumes that at the time the statute was enacted the General Assembly had the authority to create the privilege at issue, and in dicta the Court stated that "we agree with the dissent that the General Assembly could have enacted a statute extending the peer review privilege to medical malpractice actions." 984 S.W.2d at 470. The fact remains, however, that none of those separation of powers issues was actually before the Court, and so again, Sisters of Charity is not authority for a proposition that it expressly declined to address.
Notably, in Sisters of Charity, the Court subjected the assumed-to-be valid peer review privilege statute to "the nearly universal rule that privileges should be strictly construed." 984 S.W.2d at 468. That strict construction rule developed in the context of common law privileges, and by applying it to a statutory privilege this Court clearly indicated, not, as the majority would have it, that privileges are purely matters of substantive law within the wide discretion of the legislature, but rather that statutory privileges no less than the privileges defined now in the KRE are subject, at the very least, to searching *300 judicial oversight. This is another aspect of Sisters of Charity that the majority inexplicably overlooks.
The majority also ignores Weaver v. Commonwealth, 955 S.W.2d 722 (Ky.1997). In Weaver, we struck down a "police surveillance privilege" that the Court of Appeals had adopted in Jett v. Commonwealth, 862 S.W.2d 908 (Ky.App.1993). That privilege does not appear among those recognized in Article V of our Kentucky Rules of Evidence, and we explained that since the 1992 enactment of the rules the proper procedure for amending or adding to the rules, including privilege rules such as the one at issue, was established in KRE 1102 and 1103. "These procedures," we stated, "do not include amendments or additions created unilaterally by either the General Assembly or the Supreme Court (although we are aware that the General Assembly has enacted post-1992 statutes which purport to create new privileges.)" 955 S.W.2d at 727. Putting aside for the moment the Weaver Court's construction of KRE 1102 and 1103, this statement makes it clear that the mere fact that the General Assembly has enacted privilege statutes does not establish its authority to do so, and it makes more than clear, that this Court has not held, has not endorsed, has not suggested and has not intimated that privileges are matters of substantive law within the exclusive purview of the General Assembly. In short, our case law has in no way foreshadowed today's majority opinion.

V. The Kentucky Rules of Evidence Do Not Support the Unilateral Role Which the Majority has Granted the Legislature as to Privileges
The majority's reliance on our evidence rules is no less problematic. KRE 501 is the general rule concerning privileges and it is a rule of limitation. It provides that no person has a discovery, evidentiary, or testimonial privilege except as provided "by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky." The majority maintains that the "or statute" phrase recognizes the General Assembly's substantive authority to create statutory privileges. Although I agree that the rule plainly contemplates a legislative role in the creation of privileges, the majority's reading, which in essence would allow the General Assembly carte blanche to create and alter privileges, fails to account for the fact that the rule just as plainly is meant to limit privileges and just as plainly contemplates a judicial role in their creation, a role that would not comport with a regime in which privileges were deemed purely matters of substantive law. KRE 501 is more complex than the majority allows, and that complexity is reflected in how the Rules of Evidence were enacted.
Again, our current Kentucky Rules of Evidence were jointly enacted by this Court and by the General Assembly in 1992. The joint enactment was apparently meant to obviate contentious questions concerning the boundary between the Court's exclusive authority over matters of practice and procedure and the General Assembly's authority over matters of substantive law. As was observed by the Court in Sisters of Charity, supra, the enactment of Article V incorporated therein existing statutory privileges not repealed in conjunction with the enactment. 984 S.W.2d at 468 n. 3. That incorporation does not, as the majority asserts, imply anything about the prior validity of those statutes because it was precisely questions about prior validity that the Court and the General Assembly agreed to avoid by the joint enactment. The Court, in essence, granted those statutes comity, while the General Assembly, without conceding their invalidity, agreed to their becoming part of *301 the rule. Since then, as the Court observed in Weaver, the General Assembly has purported to adopt new privileges, but until now we have not been asked to determine their constitutional status. That determination requires that we consider not merely KRE 501, but KRE 1102 and 1103 as well, for those are the rules governing, or meant to govern, how the evidence rules can be added to our otherwise amended.
Unfortunately, the majority devotes only three sentences to those rules, which are in serious need of elucidation by this Court. Although not a model of clarity, perhaps, KRE 1102 essentially says that both the Court and the General Assembly may amend the rules to the extent that the Constitution gives them authority to do so, i.e., that the Court may amend the rules governing practice and procedure and the General Assembly the rules, if any, that are substantive.[4] The rule recognizes that neither body has any ultimate veto power over the other's exercise of its constitutional role, but KRE 1102 plainly contemplates that neither this Court nor the General Assembly will exercise its amending authority without proposing the change to the other. Approached in this way, turf disputes could be resolved prior to enactment. These reporting provisions are apparently what Justice Cooper had in mind in Weaver when he wrote for the Court that amendments or additions to the rules of evidence could not be created unilaterally by either the General Assembly or the Supreme Court. 955 S.W.2d at 727. See also, Manns, supra, (where the Court, again through Justice Cooper, indicated that the General Assembly's purported "unilateral amendment of KRE 609 ... violated both Section 28 [of the Kentucky Constitution] and KRE 1102(b))."
If KRE 1102 does indeed foreclose unilateral additions to the evidence rules, then the 2007 amendment creating the KASPER privilege is invalid on that ground alone, quite apart from the separation of powers question. The majority presumes otherwise, apparently, but its failure to address expressly the Weaver court's concern does a disservice, as it leaves in limbo the meaning of the KRE 1102 and 1103 *302 reporting provisions.[5] At the very least, it seems to me that those provisions create a procedure by which the General Assembly can, by seeking the Court's concurrence in statutes that bear importantly on evidentiary matters, assure itself that the legislation will be upheld. Obviously, as the majority's long list of privilege statutes attests, the General Assembly can act, and has acted, outside of that carefully crafted, cooperative procedure. But when it does so the results are subject, or should be in my view, to searching separation of powers review and a strict construction that ensures consistency with the existing rules of evidence. In any event, given the statements in KRE 1102 and 1103 that this Court and the General Assembly would cooperate in amending the rules of evidence, and given the fact that KRE 501 limits privileges and recognizes the Court's role in creating them, I strongly disagree with the majority's reading of that latter rule as conferring on the General Assembly an unlimited authority to create privileges at will.

VI. Privileges Are Not Purely Matters of Substantive Law
The majority's attempt to find support in our case law and in our rules for its decision to deem privileges purely substantive and thus the domain of the legislature is strained, in my view. The real basis for the majority's conclusion that the General Assembly has sole responsibility to oversee the rules of privilege is the aforementioned article by Professor Lawson, a principal drafter of the Kentucky Rules of Evidence. Professor Lawson discusses a longstanding scholarly debate concerning the common law testimonial privileges  the attorney-client privilege, the spousal privilege, and most recently the psychiatrist-patient privilege, to name a few  and whether or not they are truly procedural given that, unlike most other rules of evidence, their primary purpose is not to advance the reliability of the court's truth finding, but rather to protect certain relationships that depend, if their full benefits are to be realized, on frank and unfettered communication.[6]
Professor Lawson sides with those who regard those privilege rules as substantive, and I fully agree with Professor Lawson and with the majority, that the privilege rules do indeed contain a large substantive component. As Professor Lawson concedes, however, scholarly opinion is divided over the meaning of that fact. In the view of some writers, however substantive a privilege rule may be, "the law of privilege is at least half procedure, for a truthseeking interest is being weighed against a truth-obstructing interest." Lawson, 88 Ky. L.J. at 578 n. 302 (quoting from Ronan Degnan, The Feasibility of Rules of Evidence *303 in Federal Courts, 24 F.R.D. 341, 347 (1959)).
The privilege rules are not unique in this regard, moreover, for many of the rules of evidence address substantive concerns. Evidence of plea negotiations, KRE 410, or settlement discussions, KRE 408, is not admissible, for example, not because it is unreliable, but to permit such negotiations to proceed forthrightly. Evidence of certain remedial efforts, KRE 407, or certain offers to pay medical expenses, KRE 409, is not admissible, again not because it is unreliable but to encourage such remediation and payments. Lawson, 88 Ky. L.J. at 581-85. The statute at issue in Manns was adopted to further so-called victims' rights, another substantive purpose. It has been suggested, even, that there are few if any rules of evidence that do not in some manner serve a substantive purpose. Seisinger v. Siebel, 220 Ariz. 85, 203 P.3d 483, 498 (2009) (Eckerstrom, Judge, concurring in part). I know that the majority does not intend to turn the rules of evidence entirely over to the General Assembly, but its holding in this case opens the door at least to the prospect of our having to parse the rules individually to determine if they are "essentially" substantive or "essentially" procedural. That task seems to me as misguided as it is hopeless, for all of the just-mentioned rules, whatever their substantive component, by defining the evidence available for discovery or admissible at trial, clearly strike at the judicial system's core function of providing a crucible in which the truth may be discerned. These rules are to that considerable extent procedural. Rather than engage in a parsing exercise that even the scholars have found irresolvable, better, it seems to me, simply to acknowledge that some, perhaps many, of the rules of evidence are both substantive and procedural. Readenour v. Marion Power Shovel, 149 Ariz. 442, 719 P.2d 1058, 1062 (1986) (noting that the statute before it was "similar to a privilege statute, having both procedural and substantive aspects."); Busik v. Levine, 63 N.J. 351, 307 A.2d 571, 578 (1973) (noting that some parts of the law, at least, are not "divided neatly between `substance' and `procedure.'").
Because all evidentiary matters are indisputably procedural in part, we cannot, under our constitutional duty to oversee procedures, allow the General Assembly exclusive authority to define what evidence is privileged. We may, however, and under KRE 1102 we are encouraged to, defer to substantive legislative judgments concerning the use or exclusion of relevant evidence in the interests of public policy. Cf. Readenour, supra, (deferring in this way to a statute limiting the admissibility of evidence of remedial actions). Outside the cooperative procedure established by KRE 1102, the General Assembly remains free, then, to enact evidentiary statutes, such as the 2007 KASPER privilege, but those enactments must not conflict with the existing rules or with the Court's ultimate responsibility to ensure procedures that provide litigants with a meaningful opportunity to prove their claims or defenses.
The absolute privilege the Cabinet urges on us, and the majority upholds, fails that separation of powers test. It is not consistent with any of our KRE Article V privileges nor with our general duty, as noted above in the discussion of Sisters of Charity, to construe privileges narrowly so as to minimize the seriously adverse affects they have on the courts' ability to fulfill their vital truth-finding role. As Justice Scalia noted in his dissent in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), absolute privileges, which by their nature exclude reliable and probative evidence, can exact a stinging price:

*304 For ... the victim [of the rule] is ... likely to be some individual who is prevented from proving a valid claim  or (worse still) prevented from establishing a valid defense. The latter is particularly unpalatable for those who love justice, because it causes the courts of law not merely to let stand a wrong, but to become themselves the instruments of wrong.
Id. at 19, 116 S.Ct. 1923 (Justice Scalia, dissenting). Neither the Cabinet, the majority, nor Justice Scott has identified any interest an absolute KASPER privilege serves that would justify so high a price. To the extent, then, that we are asked to construe the 2007 KASPER amendment as creating an absolute privilege, impenetrable except in criminal cases,[7] the amendment in my judgment impermissibly encroaches upon the judicial function and is invalid.
We are, of course, to construe statutes if possible so as to uphold their constitutionality. Yanero v. Davis, 65 S.W.3d 510 (Ky.2001). I agree with Justice Scott that it is possible to construe the KASPER privilege in such a way as to validate it. Justice Scott correctly notes that the New York courts recognize what they refer to as a "public interest" privilege, Colgate Scaffolding & Equipment Corp. v. York Hunter City Services, Inc., 14 A.D.3d 345, 787 N.Y.S.2d 305 (2005), which is similar to the "official information" privilege recognized by the federal courts. King v. Conde, 121 F.R.D. 180 (E.D.N.Y.1988). As noted, those privileges permit the government and its agencies to refuse to disclose sensitive governmental information. Id. I agree with Justice Scott that the KASPER privilege is best understood as a statutory invocation of some such broader official information privilege, although as stated above, there is really no "official" information in the traditional sense because KASPER is simply a collection of confidential, although not privileged, medical information available elsewhere.[8]
Where it has been recognized, however, the official information privilege, or its kin, is not an absolute privilege but a qualified one. Colgate Scaffolding, supra; King v. Conde, supra. That is to say, that application of the privilege requires a balancing of the interests opposing and seeking disclosure, with the initial burden on the government to make "a substantial threshold showing that disclosure of specific information would result in specific harm to identified important interests." King, 121 F.R.D. at 190. See also, Colgate Scaffolding, 787 N.Y.S.2d at 307 ("`Public interest encompasses not only the needs of the government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation.' Therefore, to avoid abuse of the [public *305 interest] privilege, specific support is required to invoke it." (citation omitted)). Not only is construing such institutional privileges as qualified privileges the approach of the courts with experience in this area, but it is also the approach dictated by our duty to construe privileges narrowly. Sisters of Charity, supra.
Perhaps most importantly, the plain language of the 2007 amendment to the KASPER statute supports a narrow privilege; it prohibits disclosure in a civil action "where the disclosure is sought either for the purpose of discovery or for evidence." KRS 218A.202(6). Narrowly read, it prohibits a litigant from simply serving a subpoena ("sought for ... discovery") or, stated bluntly, engaging in the proverbial fishing expedition. But, significantly, it does not purport to prohibit a court order. The latter involves a neutral arbiter, the judge, having determined that the Cabinet's interest in its data collection must yield to the litigant's interest in specific relevant evidence. This is the essence of a qualified privilege, one in which courts on a case-by-case basis balance the relative interests. Trial courts in other jurisdictions, faced with official information-type privileges, have been entrusted to make those nuanced calls and our Kentucky trial courts can be similarly trusted.
In so noting, I obviously acknowledge the confidential nature of the KASPER data, the disclosure of which, I agree with Justice Scott, should not generally be made public and should be reasonably restricted. Where Justice Scott and I part company, is his suggestion that were the KASPER privilege to be construed as a qualified privilege its application here would necessarily require nondisclosure. That, of course, would be a decision for the trial court in the first instance, but, as noted above, the initial burden in resolving the privilege claim would lie, not as Justice Scott suggests, with Warner, the requesting party, to show that he could not obtain the KASPER information from some other source, but rather with the Cabinet to show that disclosure of the specific information Warner seeks would result in genuine harm to an important interest. Thus far, neither the Cabinet nor the Attorney General, as amicus curiae, has made any such showing. Along with the majority, they make only general assertions about the need to keep individuals' controlled substance prescription histories private. While this is a legitimate privacy interest, it is by no means a crucial one and, indeed, has little to recommend it where the individual whose privacy interest the Cabinet is concerned about has himself placed his medical history in issue by virtue of his complaint. Also, as both the majority and Justice Scott acknowledge, medical records, including prescription records, are not otherwise privileged but are discoverable in civil litigation. It is hard to see, therefore, how the discovery of Baumler's KASPER record would harm in any way whatever, if any, limited interest Baumler continues to have in keeping this information private. Given the general discoverability of medical records, moreover, it is simply fanciful to suggest that the possibility that a person's KASPER record might be revealed in the course of litigation would in any way inhibit a person's legitimate use of controlled substances.
Justice Scott also suggests that the discovery of KASPER records will in some unspecified way impede or undermine the important regulatory purposes of the KASPER program. Again, though, how the discovery of one individual's KASPER record might hamper the Cabinet's ability to screen prescription activity broadly is by no means apparent, and, as noted, the initial burden is on the Cabinet to specify how its regulatory purposes would be frustrated by disclosure, a burden it has not *306 even attempted to meet. Were we to construe the KASPER amendment as creating only a qualified privilege, therefore, a result in which I could concur, the Cabinet would not be entitled to a writ. It would at most be entitled to a remand for a determination of whether it had properly invoked the privilege in this case, and if so, whether its asserted interests in nondisclosure outweighed Warner's interest in discovery.
Finally, the Cabinet and the Attorney General worry that without the absolute privilege the Cabinet asserts, KASPER records would become subject to routine fishing expeditions by civil litigants. This concern, however, was adequately addressed by the Court of Appeals. As that Court noted, CR 26.02 limits discovery to matters that are relevant, thus necessitating an initial showing by the would-be discoverer that there is a specific reason to believe that KASPER data could have a genuine bearing on the case. The mere hope that something might turn up in the KASPER records is not enough and would not result in an order by the circuit court nor compel any response by the Cabinet. In the case underlying this writ action, Warner is not on a mere fishing expedition, however. He has shown that Baumler has a significant history of obtaining controlled pain medications, a history that could well bear on Baumler's motive for suing Warner and perhaps Baumler's damages. Baumler's KASPER report, which could shed additional light on his drug use or drug-seeking behavior, is, at the very least, potentially relevant. To further protect the Cabinet's KASPER data, however, the Court of Appeals, invoked CR 26.03, which permits the courts to fashion protective orders in order to prevent discovery from becoming unduly burdensome. Pursuant to this rule, the Court of Appeals remanded with instructions: the trial court was to inspect Baumler's KASPER report in camera and was not to disclose it to Warner unless it did in fact contain relevant information. This remand order thoroughly protected the Cabinet against unwarranted release of its data and demonstrates that the absolute privilege the majority has acquiesced in is as unnecessary as it is contrary to the proper role of this Court as overseer of the rules of practice and procedure.

CONCLUSION
Professor Lawson, in his 2000 law review article, noted that when courts are slow to exercise rule-making powers, legislatures jump quickly into the vacuum. He criticized, justifiedly, this Court's failure at that time to exercise its authority to amend and supplement the KRE, to mobilize the Evidence Rules Review Commission provided for in KRE 1103 and to pursue joint amendment efforts with the General Assembly as provided for in KRE 1102. The Court's failure to give the proposed amendment process of KRE 1102 and 1103 a fair test, he warned, had permitted the legislative addition
of totally unwarranted privileges that lie in wait for an opportunity to impair the search for truth in an important case.... [And make it] highly probable that the General Assembly will move well beyond the privileges area and pose a far greater threat to the integrity and efficiency of the Rules than we have seen so far.
Lawson, 88 Ky. L.J. at 588-89. Today we are presented with a clear instance of "deleterious effects ... upon the search for truth in litigation," id. at 589, if we do not exercise our Section 116 authority to construe the KASPER privilege as a qualified one, subject to the weighing powers of a trial court on a proper showing by a litigant.
*307 The 1992 adoption of the KRE was a detente of sorts, a path to the appropriate resolution of the substantive/procedural quandary that has bedeviled courts and scholars for decades. KRE 1102 provides the framework for that ideal approach, one we would be well-served to address with our General Assembly for it is undoubtedly true that the legislature, of necessity, will recognize and seek to address important privilege issues of which the Supreme Court is not yet aware. I view the KASPER privilege as the legislature's attempt to address one of those newly found issues despite the fact that the privilege language did not appear until nine years after the KASPER system was created. Whether we give a nod to the substantive nature of the privilege and then narrowly construe the simple words (which again do not prohibit court orders) as constituting a qualified privilege or, alternatively, insist the 2007 amendment is predominantly procedural but grant comity to it, again focusing on the narrowest reading of the language, as a qualified privilege, the result is the same. Although not a product of the carefully drafted, unrealized promise of the cooperative process outlined in KRE 1102 and KRE 1103, the result is a qualified privilege rule that respects the important role of both the Court and the General Assembly in matters that are inherently both substantive and procedural. Because the majority has lost sight of that balance and abdicated the Court's vital role in overseeing rules of evidentiary privilege, I must respectfully dissent.
MINTON, C.J., joins.
NOTES
[1] There are too many examples to cite in the text. They include: KRS 7.410(3) (privilege for testimony and records relating to investigation by Office of Educational Accountability, even against court subpoena); KRS 17.576 (privilege for communications in sex offender presentence evaluations); KRS 197.440 (privilege for contents of sex offender treatment); KRS 214.556(5), (6) (privilege for all information, data, and findings related to Kentucky Cancer Registry); KRS 224.01-040(2) (privilege for environmental audit reports); KRS 224.71-135 ("privilege of confidentiality" barring disclosure of environmental planning documents of farms); KRS 286.11-033 (certain information the executive director has, under Kentucky Money Transmitters Act, "shall be confidential by law and privileged, and shall not be subject to the Kentucky Open Records Act ... [and] shall not be subject to subpoena, and shall not be subject to discovery or admissible in evidence in any civil action"); KRS 304.9-280(7)(a) (privilege for insurance documents and other material related to termination of insurer's agent, specifically barring subpoena, discovery, and admission in a civil action); KRS 311.619(2), 313.021(3), 314.171(7) 8b 327.045(7) (privilege for information related to impaired physician, dentist, pharmacist, and physical therapist programs, but also barring disclosure in criminal proceedings); KRS 321.185(3) (veterinarian-client privilege); KRS 325.431(1) (privilege for accounting quality review board records and workpapers, barring testimony, discovery, subpoena, or admission).
[2] The husband-wife privilege, in contrast, is the right "to refuse to testify." KRE 504(a) & (b).
[3] Again, there are too many examples to cite in the text. They include: KRS 7.410(3) (exception for disclosure with permission of Office of Educational Accountability or after investigation); KRS 17.576 (exception for sex offender evaluation communications in sentencing proceedings or if communication relates to ongoing criminal investigation); KRS 197.440 (exception for sex offender treatment applications in sentencing, ongoing criminal investigations, or determining whether offender should continue treatment); KRS 214.556(5) (exception for disclosure to other agencies or clinical facilities); KRS 224.01-040(3), (4) (exceptions for environmental audit reports); KRS 224.71-135 (exception for disclosure to government officials, where the farm is a "bad actor," or after in camera review shows illegal activity); KRS 286.11-033 (exception for disclosure if the head of the Department of Financial Institutions is not prejudiced or in regulatory actions); KRS 304.9-280(7)(b) (exception for disclosure to federal and state insurance authorities); KRS 311.619(3), 313.021(3), 314.171(7), 315.126(8) & 327.045(8) (exceptions for disclosure of privileged information related to impaired physician, dentist, pharmacist, and physical therapist programs for treatment, reporting to professional boards, or with consent, some of which also have exceptions for court orders); KRS 321.185(3) (exception to veterinarian-client privilege for court order or waiver).
[1] Being a civil action, no question is presented as to "whether the constitutional rights afforded to a criminal defendant by the Fifth, Sixth, and Fourteenth Amendments to United States Constitution and section 11 of the Constitution of Kentucky prevail over a state policy interest expressed in a statute or rule creating an evidentiary privilege." Commonwealth v. Barroso, 122 S.W.3d 554, 558 (Ky.2003). In Barroso, we ultimately concluded "that the Compulsory Process Clause affords a criminal defendant the right to obtain and present exculpatory evidence, including impeachment evidence, in the possession of a third party that would otherwise be subject to ... privilege." Id. at 561. Thus, the issues presented herein differ from those presented by a pending companion criminal case, Commonwealth of Kentucky, Cabinet for Health and Family Services v. Hon. Gregory M. Bartlett, Judge, Kenton Circuit Court, et al., 2008-SC-000508.
[2] "The proper procedure for amending or adding to the Kentucky Rules of Evidence is established in KRE 1102 and 1103. These procedures do not include amendments or additions created unilaterally by either the General Assembly or the Supreme Court (although we are aware that the General Assembly has enacted post-1992 statutes which purport to create new privileges, e.g., KRS 325.431 [(Accounts Review Commission reports)], KRS 224.01-040 [(Environmental Audit reports)])," and KRS 422.295 (confidentiality of communications between human trafficking victim and case worker). Weaver v. Commonwealth, 955 S.W.2d 722, 727 (Ky. 1997). Where this "shared power" resides in the Kentucky Constitution is, however, a question yet to be answered.
[1] In pertinent part subsection (6) of KRS 218A.202 provides that:

"The Cabinet for Health and Family Services shall be authorized to provide data to:
(a) A designated representative of a board responsible for the licensure, regulation, or discipline of practitioners, pharmacists, or other person who is authorized to prescribe, administer, or dispense controlled substances and who is involved in a bona fide specific investigation involving a designated person;
(b) A Kentucky peace officer certified pursuant to KRS 15.380 to 15.404, a certified or full-time peace officer of another state, or a federal peace officer whose duty is to enforce the laws of this Commonwealth, of another state, or of the United States relating to drugs and who is engaged in a bona fide specific investigation involving a designated person;
(c) A state-operated Medicaid program;
(d) A properly convened grand jury pursuant to a subpoena properly issued for the records;
(e) A practitioner or pharmacist who requests information and certifies that the requested information is for the purpose of providing medical or pharmaceutical treatment to a bona fide current patient;
(f) In addition to the purposes authorized under paragraph (a) of this subsection, the Kentucky Board of Medical Licensure, for any physician who is:
1. Associated in a partnership or other business entity with a physician who is already under investigation by the Board of Medical Licensure for improper prescribing practices;
2. In a designated geographic area for which a trend report indicates a substantial likelihood that inappropriate prescribing may be occurring; or
3. In a designated geographic area for which a report on another physician in that area indicates a substantial likelihood that inappropriate prescribing may be occurring in that area;
(g) In addition to the purposes authorized under paragraph (a) of this subsection, the Kentucky Board of Nursing, for any advanced registered nurse practitioner who is:
1. Associated in a partnership or other business entity with a physician who is already under investigation by the Kentucky Board of Medical Licensure for improper prescribing practices;
2. Associated in a partnership or other business entity with an advanced registered nurse practitioner who is already under investigation by the Board of Nursing for improper prescribing practices;
3. In a designated geographic area for which a trend report indicates a substantial likelihood that inappropriate prescribing may be occurring; or
4. In a designated geographic area for which a report on a physician or another advanced registered nurse practitioner in that area indicates a substantial likelihood that inappropriate prescribing may be occurring in that area; or
(h) A judge or a probation or parole officer administering a diversion or probation program of a criminal defendant arising out of a violation of this chapter or of a criminal defendant who is documented by the court as a substance abuser who is eligible to participate in a court-ordered drug diversion or probation program."
[2] KRE 501 provides that "Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to:

(1) Refuse to be a witness;
(2) Refuse to disclose any matter;
(3) Refuse to produce any object or writing; or
(4) Prevent another from being a witness or disclosing any matter or producing any object or writing."
[3] All of the KRE Chapter V privileges, for example, are referred to expressly as privileges, and the General Assembly has referred expressly to privileges in several statutes. See, e.g., KRS 17.576 (creating a limited privilege for communications made in the course of sex-offender treatment); KRS 224.01-040 (creating privilege for environmental audits). There was some ground, then, for the Court of Appeals' conclusion that a "privilege" was not the General Assembly's intent here.
[4] KRE 1102 provides as follows:

"(a) Supreme Court. The Supreme Court of Kentucky shall have the power to prescribe amendments or additions to the Kentucky Rules of Evidence. Amendments or additions shall not take effect until they have been reported to the Kentucky General Assembly by the Chief Justice of the Supreme Court at or after the beginning of a regular session of the General Assembly but not later than the first day of March, and until the adjournment of that regular session of the General Assembly; but if the General Assembly within that time shall by resolution disapprove any amendment or addition so reported it shall not take effect. The effective date of any amendment or addition so reported may be deferred by the General Assembly to a later date or until approved by the General Assembly. However, the General Assembly may not disapprove any amendment or addition or defer the effective date of any amendment or addition that constitutes rules of practice and procedure under Section 116 of the Kentucky Constitution.
(b) General Assembly. The General Assembly may amend any proposal reported by the Supreme Court pursuant to subdivision (a) of this rule and may adopt amendments or additions to the Kentucky Rules of Evidence not reported to the General Assembly by the Supreme Court. However, the General Assembly may not amend any proposals reported by the Supreme Court and may not adopt amendments or additions to the Kentucky Rules of Evidence that constitute rules of practice and procedure under Section 116 of the Constitution of Kentucky.
(c) Review of proposals for change. Neither the Supreme Court nor the General Assembly should undertake to amend or add to the Kentucky Rules of Evidence without first obtaining a review of proposed amendments or additions from the Evidence Rules Review Commission described in KRE 1103."
[5] KRE 1103 provides for an "Evidence Rules Review Commission" chaired by the Chief Justice and including among its members the chairpersons of the House and Senate Judiciary Committees. The Commission's function is to review proposals by either this Court or the legislature for the amendment of or addition to the KRE as contemplated by KRE 1102.
[6] It bears noting that the KASPER privilege before us has none of the attributes of these time-honored, personal privileges about which Professor Lawson wrote in concluding privileges were primarily substantive, reflecting policy which "should be left to forums that are closer to the public than the courts." Lawson, Modifying the Kentucky Rules of Evidence, 88 Ky. L.J. at 579. There is no personal relationship involved in the KASPER database; indeed, the vast majority of Kentuckians are probably unaware that their controlled substance records are collected by the government and maintained in a centralized database. Certainly, those same Kentuckians have no frank and unfettered communications with the Cabinet.
[7] In Commonwealth, Cabinet for Health and Family Services v. Bartlett, 311 S.W.3d 224 (Ky.2010), we recently held that the KASPER privilege must yield to a criminal defendant's due process rights.
[8] Plaintiff Baumler placed his medical condition in controversy when he filed the underlying negligence action seeking damages including pain and suffering. The Cabinet's suggestion that the availability of Baumler's KASPER information from other sources undermines Defendant Warner's request to the Cabinet is mystifying to me. The very fact that the data collected by KASPER is available elsewhere and should have been disclosed by Baumler himself underscores the rather pointless nature of this particular privilege perceived by the majority as absolute. Contributing to this impression of an unorthodox privilege is the virtual laundry list of people who can access the information, see n. 1, supra, right down to the rookie peace officer who simply needs to state he is "engaged in a bona fide specific investigation involving a designated person ..." KRS 218A.202(6)(b).