311 S.W.3d 224 (2010)
COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, Appellant,
v.
Honorable Gregory M. BARTLETT, Judge, Kenton Circuit Court and
Larry Cole; Jonathan Cox; and Sandra D. Young (Real Parties in Interest), Appellees.
No. 2008-SC-000508-MR.
Supreme Court of Kentucky.
March 18, 2010.
*225 Ronald W. Crawford, Cabinet for Health & Family Services, Office of Legal Services, Frankfort, KY, Counsel for Appellant.
Gregory M. Bartlett, Covington, KY, pro se.
W. Robert Lotz, Jr., Covington, KY, Counsel for Real Party in Interest, Larry Cole.
Michael Andrew Hummel, Covington, KY, Counsel for Real Party in Interest, Jonathan Cox.
David E. Davidson, Cobb & Oldfield, Covington, KY, Counsel for Real Party in Interest, Sandra D. Young.
Opinion of the Court by Justice NOBLE.
Appellant, the Commonwealth of Kentucky, Cabinet for Health and Family Services, appeals to this Court from an order of the Court of Appeals denying a petition for writs of prohibition and mandamus. For the reasons set forth below, the order of the Court of Appeals is affirmed.

I. Background
Larry Cole, real party in interest[1], co-occupied a residence with Sandra Young. Police searched their residence for controlled substances, pursuant to a warrant. This warrant was supported in part by an affidavit, which described the contents of a Kentucky All-Schedule Prescription Electronic Reporting (KASPER) report on Young.
After Cole was indicted for trafficking in a controlled substance, he moved for the discovery of three KASPER reports. In particular, he requested his own report, as well as those of his co-resident Young and his co-defendant Jonathan Cox. He also moved to suppress the affidavit supporting the search warrant as containing false and misleading information about the KASPER report on Young. The trial court granted his motion for discovery.
The Cabinet moved to vacate this order, arguing that the disclosure restrictions on KASPER reports in KRS 218A.202 prevented the trial court from ordering discovery. The court held a hearing and denied the Cabinet's motion to vacate the prior order.
*226 The second order stated that the court had previously found that Cole made a sufficient showing that the records he sought "may contain information which is relevant or exculpatory to the Defense." The court then ordered that the documents be produced for in camera review. The order concluded that the court had the authority to order production of these documents because Cole's constitutional rights to compulsory and due process prevailed over any statutory bar against disclosure the Cabinet was asserting, citing Commonwealth v. Barroso, 122 S.W.3d 554 (Ky. 2003).
The Cabinet filed a petition for writs of prohibition and mandamus, seeking to prevent the enforcement of the trial court's discovery order. The Court of Appeals held oral argument and denied the writs. The Cabinet now appeals to this Court. In the meantime, the proceedings in the Kenton Circuit Court have been stayed.

II. Analysis
"[W]rits of prohibition and mandamus are extraordinary in nature, and the courts of this Commonwealth `have always been cautious and conservative both in entertaining petitions for and in granting such relief.'" Kentucky Employers Mut. Ins. v. Coleman, 236 S.W.3d 9, 12 (Ky.2007) (quoting Bender v. Eaton, 343 S.W.2d 799, 800 (Ky.1961)). A writ for prohibition may be issued if the lower court is (1) acting outside its jurisdiction and there is no remedy through an application to an intermediate court, or (2) acting erroneously within its jurisdiction and there would be no adequate remedy by appeal. Hoskins v. Maricle, 150 S.W.3d 1, 10 (Ky.2004).
The Cabinet argues that the trial court acted erroneously within its jurisdiction by ordering discovery of KASPER records because KRS 218A.202 strictly prohibits their disclosure. It claims that because no person "had any constitutional right to have KASPER enacted," and because "the General Assembly . . . had the constitutional prerogative to limit disclosure of KASPER information," it follows that the trial court could not order any disclosure that the statute prohibits.
KRS 218A.202 prohibits the disclosure of KASPER reports to criminal defendants, their counsel, or to the trial court in this case. Subsection (6) provides that KASPER reports may be disclosed "only... to persons and entities authorized to receive that data under this section," and that "[disclosure to any other person or entity ... is prohibited unless specifically authorized by this section." Neither criminal defendants nor their counsel are so authorized. Moreover, courts are not specifically authorized to receive these reports, subject to a few exceptions, see KRS 218A.202(6)(h) & (9), none of which would apply to the in camera review the court ordered here.
The Cabinet argues that this statutory prohibition controls. However, this argument overlooks the unique constitutional considerations that arise in criminal cases. Criminal cases are simply different because of the unique constitutional rights enjoyed by criminal defendants.
Whatever prohibition against disclosure KRS 218A.202 makes, it cannot infringe on a criminal defendant's rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution or Section 11 of the Kentucky Constitution. Under the Cabinet's view, a criminal defendant could not discover any report, even his own. It would not matter if the report contained exculpatory information, or even if it was exonerating. The trial court would be unable to compel disclosure, even by a court order, and even if the *227 court first screened the documents in camera to protect the confidentiality of any information that was not actually exculpatory. This cannot be the case.
It is well established that a criminal defendant has a constitutional right to discover exculpatory documents, even if those documents are confidential or if their disclosure is prohibited by rule or statute. See generally Barroso, 122 S.W.3d at 558-63. The U.S. Supreme Court has held that a criminal defendant's Sixth Amendment right to confront witnesses prevails over the government's interest in keeping juvenile records confidential. Davis v. Alaska, 415 U.S. 308, 320, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). It has also held that a defendant's due process right to present a defense prevails over evidentiary rules and privileges. Chambers v. Mississippi, 410 U.S. 284, 298, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). And a criminal defendant's right to compulsory process prevails over a statute prohibiting persons from testifying at trial. Washington v. Texas, 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
In addition, the U.S. Supreme Court has held that a defendant's right to discover exculpatory evidence in the government's possession prevails over a qualified privilege. Pennsylvania v. Ritchie, 480 U.S. 39, 56-58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In Barroso, this Court extended the logic of Ritchie, unanimously holding that a defendant's constitutional right to discover exculpatory evidence prevails over absolute privileges, too. Barroso, 122 S.W.3d at 561.
The common and necessary thread of these cases is that a criminal defendant's constitutional rights to exculpatory information prevail over rules and statutes that prohibit the defendant from receiving the information. This is true even if those rules or statutes purport to absolutely prohibit disclosure. Id. To put it simply, "constitutional rights prevail over conflicting statutes and rules." Id. at 558.
This is not to say, of course, that a criminal defendant has a right to review any confidential documents by baselessly asserting the documents might be helpful. When dealing with confidential records, this Court has previously stressed that it is necessary to "`preclude fishing expedition[s] to see what may turn up' and `unrestrained foray[s] into confidential records in the hope that the unearthing of some unspecified information'" could be useful to the defense. Id. at 563 (citations omitted, alterations in original).
Thus, in Barroso, this Court held that two steps are required before a court may give a criminal defendant access to confidential records. First, the defendant must produce "evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." Id. at 564. Second, the trial court must conduct an in camera review to determine whether or not the records sought actually do contain such evidence. Id. at 563-64.
The Barroso procedure protects a criminal defendant's constitutional rights to exculpatory records, as well as the government's interests in keeping certain records confidential. Indeed, as this Court has said regarding a rape victim's confidential psychotherapy reports: "[T]he trial judge's in camera inspection of [the victim's] psychotherapy records protect[s the defendant's] constitutional rights without destroying [the victim's] interest in protecting the confidentiality of those portions of the records . . . irrelevant to the [defendant's] interests." Id. at 564; accord Ritchie, 480 U.S. at 61, 107 S.Ct. 989 ("An in camera review by the trial court will serve *228 [the defendant's] interest [in obtaining child-abuse records for his defense] without destroying the Commonwealth's need to protect the confidentiality of those involved in child-abuse investigations.").
Turning to the case before us, the trial court's discovery order was proper because it followed the Barroso procedure for the disclosure of confidential records in a criminal trial. First, it found that the defendant made a sufficient showing that the "records may contain information which is relevant or exculpatory to the Defense." The Cabinet does not argue that this finding was erroneous. Second, after finding that the defendant met his burden, the court ordered the Cabinet to produce the records under seal for in camera review to see if the records actually were exculpatory. This protects both the defendant's rights to exculpatory material and the Cabinet's interests in the confidentiality of the records, and it is precisely what Barroso required.
The Cabinet tries to distinguish Barroso by arguing that the report in that case was "specific" and "detailed," whereas KASPER reports contain only "raw data." This argument fails for two reasons. First, it is irrelevant. Barroso relies on the report being potentially exculpatory, not on it being specific or detailed. A criminal defendant has a right to raw data, too, should it be exculpatory. Second, the claim that these reports contain only raw data is misleading, in that it implies the reports contain only an abstract data set requiring substantial analysis to have any meaning. In fact, the reports include who the patient is, who prescribed the drugs, who dispensed the drugs, what specific drug was dispensed, the metric quantity of drugs dispensed, the day's supply of drugs dispensed, and when they were dispensed. 902 KAR 55:110, at § 2(2); see also KRS 218A.202(4). Such information is detailed and specific. More importantly, it is readily understandable and concrete, requiring little if any further analysis before its impeachment value becomes apparent.
It is difficult to see what else the Cabinet could want the trial court to do to protect the confidentiality of the reports, short of denying outright a criminal defendant his constitutional right to reports in the government's control which may be exculpatory. Clearly, the trial court could not have done this.[2]
As the proponent of the writ, the Cabinet bears the burden of showing why it is entitled to the extraordinary relief it requests. Here, Cole has an unquestionable constitutional right to exculpatory evidence in the government's possession, and the trial court had the power to order an in camera review of the reports to secure this right under Barroso. Consequently, the Cabinet can succeed only by showing that the trial court failed to follow the Barroso procedure. It could have done this, for example, by establishing that the trial court was clearly erroneous in finding that the defendant met his initial burden to show that the records might be exculpatory. The Cabinet has not done this, or even tried to do so.
*229 Instead, the Cabinet's only argument is that the statute prohibits disclosure and "[c]ourts may not add or subtract from statutes." No court has added or subtracted anything from any statute; the Kentucky and U.S. Constitutions have already done all the work.

III. Conclusion
For the foregoing reasons, the order of the Court of Appeals denying the Cabinet's petition for writs of mandamus and prohibition is affirmed.
All sitting. All concur.
NOTES
[1] Jonathan Cox and Sandra Young were also named as real parties in interest by the Cabinet in their writ petition and on this appeal. Neither Cox nor Young, however, has filed a brief; nor did they join or oppose the Cabinet's writ petition.
[2] Interestingly, the record reveals that the prosecutor has a copy of two of the three KASPER reports that the trial court ordered the Cabinet to produce. The record is not clear from whom the prosecutor received the reports, but it is clear that the prosecutor has them. This is noteworthy because the prosecutor is not specifically authorized to receive these reports under KRS 218A.202 either. It appears from this that the Cabinet thinks it can rely on a statute to deny a criminal defendant access to potentially exculpatory reports, even though the prosecution has a copy of those same reports in violation of the same statute.