**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Eric GRIDER, Appellee.**

**No. 2010–CA–001484–MR.**

Court of Appeals of Kentucky.

May 11, 2012.

Discretionary Review Denied by Supreme Court Feb. 13, 2013.

---

Jack Conway, Attorney General of Kentucky, M. Brandon Roberts (argued), Assistant Attorney General, Frankfort, KY, for Appellant.

Joel Smith, Jamestown, KY, Kent Wicker (argued), Louisville, KY, for Appellee.

Kembra Sexton Taylor, Frankfort, KY, Amicus Curiae for Commonwealth of Kentucky, Board of Pharmacy.

Before COMBS and MOORE, Judges; LAMBERT,[1] Senior Judge.

## OPINION AND ORDER

MOORE, Judge:

The Commonwealth of Kentucky appeals the order of the Franklin Circuit Court dismissing the indictment against Eric Grider. Grider, in turn, has filed a motion to dismiss this appeal. After a careful review of the record, we affirm the circuit court's order because Grider had no choice in moving to dismiss the indictment due to the Commonwealth's failure to inform him of a key component of the charges against him until after the jury was impaneled and sworn. Because we affirm the circuit court's dismissal of the indictment with prejudice, we conclude that Grider's motion to dismiss this appeal on the basis that his retrial is barred by the Double Jeopardy Clause is moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Grider was indicted in 2008 on six counts of devising or engaging in a scheme to defraud the Kentucky Medical Assistance Program (Medicaid), valued at $300 or more, in violation of KRS[2] 205.8463(1). Each of the six counts alleged that during a time period of approximately two weeks in length between February 2003 and January 2004, Grider billed Medicaid for one drug while dispensing another less expensive drug. Specifically, each of the counts in the indictment stated:

> Between [time period specified], the above named defendant, Eric Grider, alone or in complicity with others, devised a scheme, or planned a scheme or artifice, or entered into an agreement, combination, or conspiracy to obtain payments from the Kentucky Medical Assistance Program (KMAP) administered by the Cabinet for Health and Family Services (or its predecessor, hereinafter the "Cabinet") by submitting fraudulent claims valued at three hundred dollars ($300) or more to the Cabinet in Franklin County, Kentucky, for prescriptions which were not dispensed as billed.

In August 2008, the circuit court entered a discovery order requiring, *inter alia*, the Commonwealth to provide a bill of particulars to Grider within thirty days, "advising the defendant of the circumstances of the alleged offense(s), including the date, time, and location of the alleged offense(s), the acts or conduct by which the defendant is alleged to have committed the offense(s),

---

1. Senior Judge Joseph E. Lambert, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Kentucky Revised Statute.

and the particular culpable mental state of the defendant." The order also stated: "The attorney for the Commonwealth shall provide to the Defendant any exculpatory evidence relating to the Defendant known to exist by the attorney for the Commonwealth."

Regarding the bill of particulars portion of the court's order, the Commonwealth responded: "The Commonwealth respectfully states that the Indictment is drafted with such specificity that it satisfies the provisions of RCr [3] 6.22. In addition, the discovery materials provided to defense counsel satisfy this requirement." As for the exculpatory evidence aspect of the court's order, the Commonwealth responded: "The Commonwealth is aware of no exculpatory evidence. Should the Commonwealth become aware of such information, it will be provided in accordance with the Rules of Criminal Procedure."

A couple of weeks before the Commonwealth filed its responses to the court's order, the Assistant Attorney General who was prosecuting the case for the Commonwealth sent a letter to the Deputy Commissioner of the Department for Medicaid Services in Frankfort. In that letter, the Assistant Attorney General informed the Deputy Commissioner that the Attorney General's Office had been investigating Grider Drug, LLC [4] "for various violations of Kentucky law regarding the submission of fraudulent claims to [the Medicaid Program]." The Assistant Attorney General stated that a "considerable" amount of

documentary evidence had been gathered, which demonstrated that the provider had been "submitting fraudulent claims to [the Medicaid Program] for drugs which were not dispensed as billed." The letter continued, explaining that "Eric Grider ha[d] been indicted by the Franklin County Grand Jury for engaging in a scheme to defraud [the Medicaid Program] by billing Medicaid for one prescription, while dispensing another in violation of KRS 205.8463." Therefore, the Assistant Attorney General asked the Deputy Commissioner, "pursuant to 42 C.F.R.[5] 455.23, and 907 KAR [6] 1:671 Section 4, [to] hold in escrow funds of Grider Drugs, and ... continue to withhold future payments until further notice." The Department for Medicaid Services abided by the Assistant Attorney General's request and began withholding and escrowing Medicaid payments it owed to Grider Drug.

Grider moved for specific Brady [7] material, including "[a]ny and all [c]omplaints allegedly made by any persons concerning alleged Medicaid fraud, including any and all recordings, documents and interoffice memos of complaints received. This request includes the case assignment documents of the instant matter to KBI Agent Kelly Hensley."

Grider subsequently moved for enforcement of the court's prior order directing the Commonwealth to provide him with a bill of particulars. Because no order was entered concerning this motion, Grider

---

3. Kentucky Rule of Criminal Procedure.

4. It appears from the record that Eric Grider was one of the owners of Grider Drug, LLC.

5. Code of Federal Regulations.

6. Kentucky Administrative Regulation.

7. This refers to evidence that should be disclosed to the defense, pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10

L.Ed.2d 215 (1963). In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. at 1196–97.

again moved to enforce the order a couple of months later.

Grider then filed another request for specific *Brady* materials from the Commonwealth. In that request, Grider sought, *inter alia*, "[t]he identity of the previously undisclosed 'anonymous' person who relayed information concerning the Defendant and his alleged activities to the Board of Pharmacy (Executive Director Mike Burleson has advised that the identity is known but will not provide it)." The Commonwealth responded without really addressing Grider's request. Rather, the Commonwealth merely stated: "The Commonwealth has indicated that [the] Board of Pharmacy made the initial complaint to the Medicaid Fraud and Abuse Control Division. No determination has been made at this time as to whom the Commonwealth will call as witnesses in the prosecution against Eric Grider."

Grider moved for the court to require the Commonwealth to release Medicaid funds it owed him that had been escrowed or, in the alternative, to dismiss the indictment. Grider contended that the "Commonwealth's Department of Medicaid Services ha[d] withheld over $700,000 owed to Mr. Grider and his pharmacy, Grider Drugs, LLC, for prescription drugs it ha[d] already dispensed, although there [was] no allegation that those claims [were] tainted in any way by fraud." Grider continued, alleging that if the court allowed the Commonwealth to continue its actions, it would effectively "strip Mr. Grider of his ability to defend himself in this action. His Sixth Amendment right to counsel of his choice, and his Fifth Amendment right to a fair trial, forbid the government from seizing these funds." Grider argued that the Commonwealth still had not provided a bill of particulars, despite having been ordered to do so months earlier, and based upon documents pro-

duced in discovery, it appeared that the Commonwealth was claiming that the total amount of losses for the allegedly fraudulent claims by Eric Grider and other pharmacists at Grider Drug was $23,730.97. Grider alleged that he was entitled to be indemnified from Grider Drug for his legal expenses pursuant to KRS 275.180, and that without the funds, he was unable to pay the legal and expert witness expenses he needed to defend himself. Furthermore, Grider asserted that although there are state regulations which permit the Department of Medicaid Services to withhold Medicaid payments when there have been instances of overpayments or court-ordered restitution, the state regulation did not trump his constitutional rights and, in any event, no "overpayment" exceeding $23,371 had been identified by the Commonwealth. Finally, Grider contended that although the state regulation provided that an administrative appeal could be filed concerning the decision to withhold Medicaid payments, he would have had to testify on his own behalf at that administrative proceeding if he had filed such an appeal; this would have resulted in his waiving his Fifth Amendment right against self-incrimination.

In February 2009, Grider moved to dismiss the indictment due to the Commonwealth's failure to comply with the circuit court's order directing the Commonwealth to file a bill of particulars within thirty days of its August 7, 2008 order. His motion was denied without prejudice. The court ordered the Commonwealth to file a bill of particulars "setting forth with particularity the factual and legal basis for the charges set forth in the Indictment" by a specific date. (Emphasis removed). The court also ordered Grider, the Commonwealth, and counsel for the Cabinet for Health and Family Services to continue trying to resolve all of the issues concerning the Cabinet's withholding of Medicaid

funds from Grider Drug, and to provide the court with a status report on those negotiations by a particular date.

The Commonwealth then filed its bill of particulars, which referenced a spreadsheet that the Commonwealth stated was attached to the bill of particulars.[8] The Commonwealth explained that the spreadsheet contained details concerning the patients, dates of service, drug prescribed by each patient's physician, drug actually dispensed by the pharmacy, drug that was billed by Grider to Medicaid, amount for the drug that was billed to Medicaid, and amount paid by Medicaid for each claim.

The circuit court entered an order denying Grider's motion to dismiss for government misconduct; denying Grider's motion to suppress evidence; and finding Grider's motion to release funds held in escrow to be moot at that time. The court permitted Grider to reserve the right to re-assert the motion to release funds if the government's actions made it impossible for him to pay for his defense.

Grider filed a motion in limine to prevent the Commonwealth from presenting evidence or testimony at trial beyond what was included in the bill of particulars. Grider reasoned that a motion in limine was warranted because the spreadsheet attached to the Commonwealth's Bill of Particulars was incomplete. He argued that many of the purportedly fraudulent Medicaid claims were missing important information concerning the amounts that were reimbursable from Medicaid for the drugs that were dispensed by the pharmacy.

Grider moved to exclude newly discovered evidence. Grider contended that at a court conference in April 2009, the Com-

monwealth's Attorney disclosed "that she had recently received documents from First Health [9] related to the amounts of payment to Mr. Grider for the claims that are at issue in this case." Grider contended that after the court conference, counsel for the Commonwealth gave him "several hundreds of pages of documents which had never been produced before. These documents, Remittance Advices, explain which claims were paid." Grider stated that he did not want to delay his trial, which was quickly approaching at that time. But if the court did not grant his motion to exclude the newly discovered evidence, he would have to request a continuance.

The Commonwealth filed a supplemental discovery response that stated it included spreadsheets "detailing the drugs written, dispensed, and billed for various Medicaid patients including the amount of the claim that was submitted, paid, and what would have been paid had the claim been billed as dispensed."

The circuit court ordered the Commonwealth to provide Grider with copies of any correspondence between the Attorney General's Office and the United States Drug Enforcement Agency, and between First Health and the Attorney General's Office. The court also noted that the Commonwealth represented to the court that it did not possess

> information regarding any specific communications or complaints made by individuals to the Kentucky Board of Pharmacy against Eric Grider and/or Grider Drugs. Defendant may subpoena this information from the Kentucky Board of Pharmacy and may subpoena the Executive Director of the Board of Pharmacy to provide testimony on this issue. In

8. That version of the spreadsheet was not included in the record before us.

9. It appears that First Health is a Medicaid contractor that assisted the Commonwealth in compiling data related to this case.

the event the AG's office does have in its possession any information about individuals who may have lodged complaints against Defendant Grider, other members of the Grider family, and/or the Grider drugstores, this information shall be provided to the Defendant per this Court's prior discovery orders.

The court further noted that Grider had "repeatedly requested the return of original documents, including but not limited to original prescriptions, seized by the Commonwealth as part of its investigation." The court ordered the Commonwealth to return the originals of all documents seized by a particular date.[10]

The Commonwealth filed a supplemental response to discovery pursuant to the court's order. The Commonwealth's response stated that attached to it was email correspondence between an agent and employees of First Health.[11] The government also stated as follows:

> The Commonwealth is not in possession of any written complaints or any other documentation of complaints lodged against Eric Grider. The Undersigned was only recently made aware by an agent of the Attorney General's Office that during the referral of the complaint to the Office of the Attorney General from the Kentucky Board of Pharmacy, it was made aware to the Office of the Attorney General that an individual by the name of [Complainant [12]] had given a statement to the Kentucky Board of Pharmacy. The Commonwealth is not in possession of any statement or correspondence from [Complainant] to the Kentucky Board of Pharmacy. The Commonwealth has previously delivered in discovery interview summaries for [Complainant] conducted by the Office of the Attorney General.

---

**10.** We pause to note that the Commonwealth's failure to turn over the original documents to Eric Grider's father and co-owner of Grider Drug, Leon Grider, was the subject of a prior appeal in another case before this Court. *See Commonwealth v. Grider*, No. 2009–CA–002080–MR, 2011 WL 3516296, *1 (Ky.App. Aug. 12, 2011). In that case, the circuit court ordered the Commonwealth to turn over the original documents or provide "meaningful access to these documents." The Commonwealth did not comply with the Russell Circuit Court's order, so the court dismissed the indictment without prejudice. On appeal, this Court held that in remedying the Commonwealth's violation of the discovery order

> [t]he circuit court may dismiss the indictment but must initially attempt to compel compliance by a less severe penalty. RCr 7.24(9). For example, the circuit court may properly utilize its contempt powers to compel compliance or may refer any recalcitrant attorney, including those who represent the Commonwealth, to the Kentucky Bar Association for appropriate disciplinary proceedings. Simply put, we believe it incumbent upon the circuit

court to utilize the least severe sanction to punish the Commonwealth and to insure its compliance with the court's discovery order.

*Grider*, No. 2009–CA–002080–MR, 2011 WL 3516296, at *6.

Therefore, this Court found that the circuit court abused its discretion in dismissing the indictment because there were other less severe sanctions that should have been utilized first. Although Senior Judge Lambert concurred in the majority opinion in that case, he wrote a separate concurring opinion "to express [his] disapproval of the Commonwealth's behavior in [that] case." *Grider*, No.2009–CA–002080–MR, 2011 WL 3516296, at *7 (Lambert, S.J., concurring).

**11.** That correspondence was not attached to the Commonwealth's response in the record before us, but we assume that Grider received a copy of the correspondence with the Commonwealth's response, because he does not allege otherwise.

**12.** Because the name of this witness is subject to a protective order by the circuit court, we will refer to this person as "Complainant" in this opinion.

The Commonwealth also asserted that the circuit court lacked jurisdiction to order the return of documents, as some of the documents concerned other active investigations against other individuals involved with Grider Drugs. Therefore, the Commonwealth informed the circuit court that it had sought a Writ of Prohibition and/or a Writ of Mandamus in the Kentucky Court of Appeals concerning those documents. On appeal, this Court denied the Commonwealth's petition for a writ of prohibition. *See Commonwealth v. Shepherd,* No. 2009–CA–000756 (Ky.App. Dec. 11, 2009) (order denying petition for writ of prohibition).

Grider filed a supplemental memorandum in support of his motion to preclude expert testimony. He alleged that Rob Coppola, the Commonwealth's proposed expert on the history of drug pricing, was unqualified, the data used by the Commonwealth was unreliable, and the methodology in determining what the drug prices were in the past was flawed. Grider explained that the case concerned "drugs dispensed over six years ago. The Department of Medicaid Services no longer possesses records showing what payments Mr. Grider would have been entitled to receive. In its attempt to find a way to cover up this fatal hole in its case, the government has resorted to guesswork."

Grider again moved to dismiss the indictment on the ground that the government had violated his Sixth Amendment right to counsel of his choice. Grider acknowledged that he had previously filed a motion to dismiss on this ground, but he had withdrawn his prior motion because the government had agreed to release all but $300,000 of the funds owed to Grider. However, as the Medicaid reimbursements to Grider began again, "the government cut off payments for state workers and retirees under the Commonwealth's insurance plans, a major component of Grider Drugs' business." Grider alleged that Grider Drug had filled over $1 million in prescriptions for people who participated in the Commonwealth's insurance plans, but it had not been reimbursed for those expenses. Grider explained that the payments had been discontinued "after the Attorney General's Office informed the prescription benefits manager, Express Scripts, about the indictment.... Other payors Express Scripts represents, including TriCare (federal government workers), Humana, and WellPoint ha[d] also cut off payments." Grider alleged that the government's actions had caused him to be unable to pay the legal and expert fees he required to defend himself.

In March 2010, the Commonwealth filed a notice with the circuit court of its intent to present a summary exhibit, *i.e.,* spreadsheets that included the following information for various reimbursement claims Grider Drug had allegedly made: date of service; recipient name; prescription number; drug prescribed; drug billed; quantity billed; drug dispensed; quantity dispensed; amount paid as billed; amount that would have been paid as dispensed; and the difference between the amount paid as billed and the amount that would have been paid as dispensed.

In May 2010, Grider moved to exclude exhibits created by Steve Hart of the Kentucky Board of Pharmacy and any testimony related to those exhibits. Grider contended that despite the court's prior discovery orders, the Commonwealth had waited until five days (*i.e.,* three business days plus one weekend) before trial was scheduled to begin to produce a computer disc that was utilized by Steve Hart in his investigation. Grider alleged as follows:

The disc consists of three Excel files, containing 11 spreadsheets. The spreadsheets each contain as many as

51,303 rows and 15 columns. All total, there are 3,884,377 items of data. From a cursory review of the files, they appear to be a version of the government's spreadsheets of alleged fraudulent claims submitted by Mr. Grider. The derivation, creation, content and accuracy of the government's summary spreadsheets is a highly important issue in this case, and the government's failure to produce these files is inexcusable.

Grider contended that he had insufficient time to evaluate the disc for use at trial. Therefore, he asked the court to deem the evidence on the disc, as well as any testimony from Steve Hart, inadmissible at trial.

A couple of days later, after a pretrial hearing on May 7, 2010, the circuit court ordered the following in regard to Complainant, who was the person who originally made the allegations against Grider Drug to the Kentucky Board of Pharmacy:

> ALL records related to [Complainant], a witness for the Commonwealth, related to his pharmacy license, his participation in the Pharmacy Recovery Network, and his participation in any criminal wrongdoing, any substance abuse issues, and any statements he has made regarding the subject matter of this prosecution, shall be IMMEDIATELY PRODUCED and provided to counsel for the Defendant. This Order is directed to all agents and employees of the Commonwealth of Kentucky, including the Kentucky Pharmacy Board, the Pharmacy Recovery Network, and any agent, employee, or contractor of those agencies, including Barry Finkerson of the Pharmacy Recovery Network, and Steve Hart of the Kentucky Pharmacy Board. This Court finds that disclosure of this information is required under *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), and failure to make

this disclosure by 10:00 a.m. on Monday, May 10, 2010 may result in the dismissal of this Indictment.

The court subsequently entered an order granting the Kentucky Board of Pharmacy's motion for a protective order concerning the information that was produced in accord with the court's May 7, 2010 order concerning the Board of Pharmacy's records pertaining to Complainant and the Pharmacist Recovery Network. The court noted that the Board of Pharmacy argued that pursuant to KRS 315.126, the information was confidential. However, the court found that the documents produced constituted exculpatory evidence and, therefore, the government was required to produce them pursuant to *Brady*. The court also noted that the Board of Pharmacy lacked standing "to assert the privacy interests of the individual in question, who was identified as a witness for the prosecution in this case." Regardless, the court granted the motion for a protective order because Grider informed the court that he did not object to it.

The case proceeded to a jury trial. After the jury was seated and sworn, and opening arguments were delivered, the jury was released for the day. The parties then presented arguments to the court concerning Grider's motion to dismiss the indictment based upon *Brady* issues. The court also noted there was an issue with pre-authorization that the Commonwealth had raised during opening arguments, and the court expressed its uncertainty regarding how Grider's failure to obtain pre-authorization from Medicaid for certain drugs affected the charges against Grider. The Commonwealth responded to the court's concern and explained that, from its perspective on the theory of the case, the pre-authorization process was "tantamount" because Medicaid regulations provide that reimbursement shall be denied if

pre-authorization is required; it is either not obtained, or it is denied. The court replied, stating it was the first time in the two years the case had been before the court that the court became aware of the pre-authorization requirement being a key part of the prosecution's case. The court noted the pre-authorization aspect of the Commonwealth's case had not been expressed in its bill of particulars. The circuit court took the motion to dismiss under advisement and recessed for the day.

The following morning, the court announced its intention to declare a mistrial. The court informed the parties of its intention to dismiss the indictment against Grider, but stated it would permit the Commonwealth to brief the issue first.

Approximately two months later, the circuit court entered its order granting Grider's renewed motion to dismiss the indictment. The court's order stated, in pertinent part, as follows:

At issue are two categories of evidence. The first relates to the Commonwealth's disclosures related to the witness [Complainant], the complaining witness to the Board of Pharmacy [BOP], who initiated this prosecution. The second is a spreadsheet compiled by Medicaid contractor FirstHealth,[13] which was turned over to the defense on the evening of Friday, May 7, 2010, before the trial was to begin on Monday, May 10. The FirstHealth spreadsheet contains a large amount of data never previously disclosed, including data from at least two months during the time period covered by the Indictment that were compiled and reviewed which were not included in

the charges returned by the Grand Jury, thus giving rise to the implication that the billing practices for those months were not illegal. The defendant further notes that there are substantial differences in the data included in the FirstHealth spreadsheet, and the spreadsheets previously provided by the Commonwealth.

[Complainant] is a licensed pharmacist who worked at the store operated by the defendant Eric Grider. On May 5, 2010, only 5 days before trial, the Commonwealth disclosed that [Complainant] had provided a statement to the government which confirmed that he was a drug addict, that he had stolen drugs from Grider Drug Stores, and that he had initiated the complaint with the Board of Pharmacy in 2005 in order to avoid being accused of misconduct. He further disclosed that although he admitted numerous violations of law to the Board of Pharmacy's investigators and director, ... he was allowed to retain his pharmacy license and avoid disciplinary action by entering into the Pharmacist Recovery Network. Testimony from BOP official Steve Har[t] at the hearing on May 7 indicated that entry into this program requires the official surrender of a pharmacist's license for the period of time the pharmacist is in treatment. The records disclosed over the weekend pursuant to the Court's order further disclosed that [Complainant] has had numerous positive drug tests during the last several years while he allegedly was a participant in the "recovery" program, and a cooperating witness in the government's case, yet he still has never been

13. We pause to note that in prior documents in the circuit court record, this Medicaid contractor's name was spelled "First Health." However, in its order dismissing the indictment, the circuit court spelled it "FirstHealth." In this opinion, we have adopted the spelling as "First Health," but in quoting from the circuit court's order dismissing the indictment, we have not changed the circuit court's spelling from "FirstHealth," for ease of reading.

disciplined by the BOP. Those records further confirm that numerous officials at the BOP including the director and the chief investigator had personal knowledge of these matters, yet this information was not disclosed to the Defendant, even in response to a subpoena. A BOP email dated February 2, 2006 alleged that [Complainant] was "unknown" to the BOP because the Board's executive staff apparently operates under a legal fiction that acceptance into the treatment program obviated any "official" knowledge of these admitted serious violations of law. Apparently because these emails were self-designated as "confidential" and the Board took the position that [Complainant] was "unknown" to its staff, the Board could flagrantly violate the directive of this Court in the subpoena to produce documents related to [Complainant's] complaints. Thus, the prosecution failed to disclose critical evidence that it, for all practical purposes, has effectively granted [Complainant] immunity prosecution in exchange for his cooperation in its investigation of the Defendant.

The severity of the *Brady* violation is compounded by the fact that the Defendant has previously sought disclosure of all complaints related to Grider to the BOP. The Commonwealth represented to the Court that there were no such complaints to the best of its knowledge. Relying on the Commonwealth's representations, the Court, in an Order dated over a year ago (April 23, 2009) denied the Defendant's request for a court order compelling such disclosure, and noted that the Defendant could subpoena the records from the Board, and its employees. Over two months prior to trial, the Defendant did subpoena the Board, as directed by this Court's Order. The Board withheld the information later produced under this Court's May 7 Order.

This withholding of relevant information by the BOP severely disadvantaged the defense in this trial. It is equally troubling that Mr. Hart testified that the Board has a conscious policy of not writing down complaints it receives "pharmacist to pharmacist." This policy resulted in concealment of [Complainant's] complaints against Grider. The conscious failure of the BOP to document serious allegations involving pharmacists, could be construed in the context of this case to be an intentional effort to hide the involvement of a crucial witness who had ulterior motives for pursuing a complaint against the Defendant, and who has received extremely favorable treatment from the government, avoiding any prosecution or regulatory penalty for serious violations of law while implicating the defendant in the allegations at issue here.

Moreover, counsel for the Commonwealth, at the hearing held on this matter in chambers, represented to the Court that the former division director of the Attorney General's Medicaid Fraud unit *had been advised* of the involvement of [Complainant] over a year ago, although this information apparently was not shared with the attorneys prosecuting this case. Thus, at the same time the Commonwealth represented to the Court that there were no such complaints, the Attorney General's office had knowledge of [Complainant's] complaints to the BOP. [Complainant] apparently also made similar disclosures to Detective Scott Hammond[, an] officer of the Kentucky State Police, who allegedly was a personal friend or acquaintance of [Complainant], and who also apparently made no record of his conversation with [Complainant] in another interview at the same time of

[Complainant's] initial complaint to the BOP in 2005. In these circumstances, it is completely unacceptable for this crucial information to have been withheld until virtually the last minute.

The trial of this case has already been delayed by over a year by virtue of the Commonwealth's filing of a petition for prohibition on an unrelated issue in the Court of Appeals, which resulted in a stay of the Court's April 23, 2009 pretrial Order. The Defendant has suffered severe financial detriment because of this delay by virtue of the actions of the Medicaid program, the state Personnel Cabinet, and various other government providers and insurers, who have suspended payment to the Defendant because of the pendency of these charges. In these circumstances, it would be unfair to delay the trial yet again because of the government's failure to comply with its *Brady* obligations. The Court finds that the dismissal of the indictment is further supported by the government's shifting theories of criminal liability in this case. The Court has found it difficult to discern the precise nature of the government's allegations of fraud in this case. The government alleges that the Defendant billed the Medicaid program for a different drug than the drug dispensed to the customer. The government has conceded that the drug received by the customer was medically appropriate, but claims that the fraud resulted from billing the Medicaid program for something else, even though the drug billed to Medicaid was often cheaper than the drug dispensed. Thus, the government has charged fraud in numerous instances in which the actions of the defendant, by the government's own admission, saved the taxpayers' money. In light of this information, the Court required the government to file a bill of particulars to more precisely state the factual and legal basis of its charges. That bill of particulars was filed on February 19, 2009, prior to the delay resulting from the Court of Appeals' stay issued in connection with the unsuccessful petition for a writ of prohibition.

The government at trial, in its opening statement, and in argument to the Court, has now alleged that the Defendant's billing violated Medicaid's administrative regulations requiring pre-authorization of reimbursement for certain drugs, a critical component of its case which is completely unmentioned in the Indictment or the bill of particulars. The government alleged this gave the Defendant a competitive advantage over other pharmacies that delayed in dispensing drugs until pre-approval by the state had been granted, increasing the Defendant's "market share." Yet neither the indictment nor the bill of particulars makes reference to any statute or administrative regulation with such a pre-approval requirement. Nor is the defendant charged with an anti-trust violation, or with a consumer protection violation.

Previously, it appeared that the government's theory was simply that it was fraudulent to bill for something other than what was dispensed. If such billing practices violate a Medicaid regulation, or a Medicaid policy codified in an official provider manual, that information should have been clearly alleged, and the policies the defendant is alleged to have violated should have been produced in discovery, as well as charged with specificity in the Indictment or the bill of particulars.

Moreover, the FirstHealth spreadsheets provided on Friday[,] May 7, now raise additional questions as to whether the government has properly charged that

any of the allegedly improper billings exceeded the three hundred dollar threshold for a felony prosecution. Since the Indictment was brought after the running of the one[-] year statute of limitations for misdemeanors, it is questionable whether the allegations of the government could be sustained for the felony charge, or whether instead the government has arbitrarily aggregated hundreds of claims in order to allege a felony. Moreover, neither the Indictment nor the bill of particulars allege[s] that any of the drugs dispensed would not have been fully reimbursed if the Defendant had followed the correct billing procedure.

While such billing practices may be shoddy, incorrect or bad accounting practice, the failure to obtain pre-approval for dispensing a covered medication is far different from obtaining payment for services that were not rendered. While the government has broad discretion in specifying a time frame for charges of Medicaid fraud, in cases such as this, the net loss to the government of over $300 necessary to sustain a felony charge appears to be largely dependent on the time frame ... for which the government seeks to frame its charge. Here, the gravamen of the government's allegations now appears to be failure to obtain pre-approval for the prescription that was billed, yet that allegation is never clearly set forth in the charging documents. In the context of the government's arguments in opening statements, it appears that the Indictment may reasonably be construed to charge dozens, or perhaps even hundreds, of misdemeanors (which are barred by the statute of limitations)[,] rather than 3 felonies.

Moreover, one member of the jury pool, who was excused for cause, stated to the Court that she worked for the state's Medicaid claims contractor, and had been approached within the last few weeks about identifying the drugs from the time frame of the indictment which required pre-authorization. She stated that so much time had elapsed that she could not remember which drugs required pre-authorization. The prosecution confirmed that this inquiry had been made at its request in trial preparation. This is another indicator of the difficulty of ascertaining the alleged regulatory violations that the government asserted in its opening statement, even by employees who worked every day in the field of Medicaid reimbursement, and the failure to clearly allege those violations in the Indictment or the bill of particulars, puts the defendant at an extremely unfair disadvantage.

All of these concerns support dismissal of the indictment because the Defendant has clearly been deprived of a fair opportunity to defend himself against the government's charges. All of these questions could have been reasonably contested in pretrial hearings, or at trial, if the government had provided the information required in advance of trial in compliance with the repeated discovery orders entered by the Court, and the Court's repeated orders directing the filing of a bill of particulars. The defendant should not be required to shoot at a moving target, especially when the government has failed to comply with its discovery obligations. Since the information regarding [Complainant] and the most recent FirstHealth spreadsheets were both provided on the eve of trial, this Court believes that dismissal is the only fair remedy. Any further delay occasioned by the government's failure to comply with the Court's orders would unfairly prejudice the Defendant.

Therefore, the circuit court granted Grider's renewed motion to dismiss the indictment.

The Commonwealth now appeals, contending that the trial court did not have the authority to dismiss the indictment. Additionally, after the Commonwealth filed its notice of appeal in this case, Grider moved to dismiss the appeal on the basis that this Court does not have jurisdiction over the matter because a reversal and retrial would violate the Double Jeopardy Clause. That motion was passed to this panel to address the merits of the motion. Counsel for the Commonwealth of Kentucky, Board of Pharmacy (BOP) also moved this Court for permission to file an amicus curiae brief. That motion was granted, and the amicus curiae brief was filed. Amicus Curiae BOP argues that the records of the Pharmacist Recovery Network (PRN) are confidential, pursuant to KRS 315.126. BOP maintains that the privilege is absolute, so the records are not discoverable unless certain circumstances are present. Amicus Curiae BOP contends that those circumstances were not met in this case, and that the trial court erred in concluding that the BOP intentionally hid information of a PRN participant and informant in this case, Complainant, from Grider.

## II. STANDARD OF REVIEW

■ We review a circuit court's decision to dismiss an indictment for an abuse of discretion. *See Commonwealth v. Baker,* 11 S.W.3d 585, 590 (Ky.App.2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000).

## III. ANALYSIS

The Commonwealth asserts that the trial court did not have the authority to dismiss the indictment. Grider moves to dismiss the appeal on the basis that this Court does not have jurisdiction over the matter because a reversal and retrial would violate the Double Jeopardy Clause. Because an analysis of the Commonwealth's claims is necessary in order to determine whether the circuit court properly dismissed the indictment and, in turn, whether a reversal and retrial would violate the Double Jeopardy Clause, we begin with a discussion of the Commonwealth's claims on appeal.

The Commonwealth notes that the circuit court's order of dismissal did not specify whether it was with or without prejudice and, therefore, we must construe it as having been a dismissal with prejudice. We agree with the Commonwealth in this regard and, accordingly, find that the circuit court's dismissal of the indictment was a dismissal with prejudice. *See Commonwealth v. Hicks,* 869 S.W.2d 35, 38 (Ky. 1994).

■ The Kentucky Supreme Court has stated that the Kentucky Constitution provides for the separation of powers:

The power to define crimes and establish the range of penalties for each crime resides in the legislative branch. The power to charge persons with crimes and to prosecute those charges belongs to the executive department, and by statute, is exercised by the appropriate prosecuting attorney. The power to conduct criminal trials, to adjudicate guilt and to impose sentences within the penalty range prescribed by the legislature belongs to the judicial department.

*Gibson v. Commonwealth,* 291 S.W.3d 686, 689–90 (Ky.2009). Further, "subject to rare exceptions usually related to a defendant's claim of a denial of the right to a

speedy trial, the trial judge has no authority, absent consent of the Commonwealth's attorney, to dismiss, amend, or file away *before trial* a prosecution based on a good indictment." *Gibson,* 291 S.W.3d at 690 (internal quotation marks omitted) (emphasis added).

> There are a variety of situations which may result in a dismissal of a criminal case under circumstances which, against the wishes of the Commonwealth, preclude further adjudication and are, in effect, a dismissal "with prejudice." These include the violations of the right to a speedy trial and the mistrials that occur after jeopardy attaches. In *Commonwealth v. Baker,* [11 S.W.3d at 590], our Court of Appeals recognized that "outrageous government conduct could taint evidence irrevocably, or prejudice a defendant's case on the merits such that notions of due process and fundamental fairness would preclude reindictment."

*Gibson,* 291 S.W.3d at 690–91. If the Commonwealth has refused to comply with a discovery order entered in accord with RCr 7.24(9), and the refusal resulted in severe prejudice, a circuit court may dismiss the criminal indictment. 8 Leslie W. Abramson, *Kentucky Practice—Criminal Practice and Procedure* § 21.73 (2011). Pursuant to RCr 7.24(9), the circuit court may sanction a party in any manner that is "just under the circumstances."

The Supreme Court in *Gibson* concluded that, under the circumstances of that case, it was

> not within the province of the judicial branch of our government to grant a request to designate the dismissal "with prejudice" where [the defendant] made no claim of denial of her right to a speedy trial, of prosecutorial misconduct so outrageous as to irrevocably taint the case against her, of double jeopardy, or of any other deprivation of rights which, under [statute] or under recognized principles of Constitutional law, forecloses a future attempt to prosecute her.

*Gibson,* 291 S.W.3d at 691.

 When a trial court ends a trial after it began but "before a verdict was reached on grounds unrelated to guilt or innocence[,] such action constitutes a mistrial." *Derry v. Commonwealth,* 274 S.W.3d 439, 445 (Ky.2008). In cases where a defendant requested "to end the proceeding before the merits could be addressed by the jury, he actually asked for a mistrial. (A dismissal of the indictment could follow, but the trial had to be ended first)." *Derry,* 274 S.W.3d at 445.

In the present case, the circuit court informed the parties that it would enter an order declaring a mistrial in the case.[14] It then permitted the parties to brief the issue of whether the indictment should be dismissed. During a subsequent hearing, the court noted that the parties had briefed the issue.[15] The court ultimately dismissed the indictment with prejudice.

The circuit court dismissed the indictment in part due to alleged *Brady* violations, *i.e.,* the Commonwealth's failure to disclose exculpatory evidence regarding the Complainant's substance abuse issues and participation in alleged criminal wrongdoing until days before trial, and the Commonwealth's failure to provide the defense with a copy of the version of the spreadsheet that the Commonwealth intended to use during trial until the Friday before the Monday that trial was sched-

---

**14.** That order is not in the record before us.

**15.** The briefs that were apparently submitted by the parties to the circuit court on the issue of dismissal of the indictment are not in the record before us.

uled to begin. The spreadsheet summarized the evidence that formed the bases for the charges against Grider, and it contained thousands of pieces of information, some of which were exculpatory to Grider. However, the spreadsheet was too large for Grider's attorneys to adequately analyze during their final trial preparations, in order to provide the effective assistance of counsel to Grider at trial.

In cases such as this, where Grider was indicted on six counts of devising or engaging in a scheme to defraud Medicaid, valued at $300 or more, the amount of money involved in the alleged scheme is a material factor to determining whether or not the accused should be found guilty and, if found guilty, what his punishment and total restitution amount should be. Therefore, this information is essential to planning out a defense strategy and to ensuring that a defendant receives the effective assistance of trial counsel to which he is entitled.

As the circuit court indicated, the final version of the spreadsheet produced three days before trial contained a significant amount of data that had not been disclosed previously, including data concerning approximately two months of the time period covered by the indictment that had been compiled but had not been included in the grand jury's charges. The circuit court

reasoned that this gave rise "to the implication that the billing practices for those months were not illegal." Moreover, much of the data in the spreadsheet showed that Grider had billed Medicaid less than the amount to which he was entitled, which implies that any errors in billing Medicaid, either to Grider's benefit or detriment, were likely caused by mistakes in accounting, rather than an *intent to defraud.* Therefore, the spreadsheet contained a large amount of exculpatory evidence, and it should have been disclosed earlier.

■ Although *Brady* requires exculpatory evidence to be produced in order to ensure the defendant is not deprived of his right to a fair trial, the Kentucky Supreme Court has held that "*Brady* only applies to the discovery, *after trial,* of information which had been known to the prosecution but *unknown to the defense.*" *Bowling v. Commonwealth,* 80 S.W.3d 405, 410 (Ky. 2002) (internal quotation marks omitted).

■ In the present case, the Commonwealth appears to have disclosed the exculpatory evidence concerning the Complainant and the spreadsheet just prior to trial, and after the Commonwealth represented to the circuit court previously that it had no exculpatory evidence concerning the Complainant.[16] Regardless, because

16. Amicus Curiae BOP argues that the records of the Pharmacist Recovery Network (PRN) concerning the Complainant are confidential, pursuant to KRS 315.126, and the privilege is absolute, so the records are not discoverable unless certain circumstances are present. Amicus Curiae BOP contends that those circumstances were not met in this case and that the trial court erred in concluding that the BOP intentionally hid information of a PRN participant and informant in this case, Complainant, from Grider. However, "[i]t is well established that a criminal defendant has a constitutional right to discover exculpatory documents, even if those documents are confidential or if their disclosure is prohibited by

rule or statute." *Commonwealth, Cabinet for Health and Family Services v. Bartlett,* 311 S.W.3d 224, 227 (Ky.2010). "[A] defendant's due process right to present a defense prevails over evidentiary rules and privileges." *Id.* Although a witness's psychotherapy records may be protected by an absolute privilege, "[t]he relevancy of this type of evidence to [the] witness's credibility is universally recognized." *Commonwealth v. Barroso,* 122 S.W.3d 554, 562 (Ky.2003). In fact, in *Barroso,* the Kentucky Supreme Court quoted favorably from a Connecticut case that stated, in pertinent part, as follows: "Certain forms of mental disorder have high probative value on the issue of credibility.... [M]any types of

the exculpatory evidence was disclosed prior to trial, *Brady* is inapplicable. The circuit court therefore erred to the extent that it dismissed the indictment based upon the Commonwealth's alleged *Brady* violations.

■ However, the circuit court also relied on other reasons for dismissing the indictment. For example, the court found that dismissal of the indictment was warranted because the Commonwealth had shifted its theories of criminal liability. The court noted that the government admitted charging Grider with defrauding Medicaid even in instances when Grider billed Medicaid for a drug that was cheaper than the drug dispensed, resulting in a savings of taxpayers' money. The circuit court also found that in the government's opening statement, it alleged for the first time that Grider's billing practices violated Medicaid's administrative regulations

requiring pre-authorization to be reimbursed for specific drugs, which the Commonwealth alleged resulted in Grider's obtaining a competitive advantage over pharmacies that waited to obtain pre-approval before dispensing the drugs. This allegation regarding pre-authorization was raised for the first time in the Commonwealth's opening argument at trial, despite the fact that the circuit court had repeatedly ordered the Commonwealth to provide a bill of particulars to Grider detailing the circumstances of the offenses alleged and the acts or conduct by which he was alleged to have committed the offenses. Additionally, the Commonwealth contended that there was a Medicaid regulation requiring pre-authorization, but the Commonwealth neglected to cite to any such regulation in either the bill of particulars or the indictment. Furthermore, the circuit court explained that one

---

emotional or mental defect[s] may materially affect the accuracy of testimony; a conservative list of such defects would have to include ... drug addiction." *Barroso*, 122 S.W.3d at 562 (internal quotation marks and citation omitted). When the privileged records "of a crucial prosecution witness contain evidence probative of the witness's ability to recall, comprehend, and accurately relate the subject matter of the testimony, the defendant's right to compulsory process must prevail over the witness's ... privilege." *Id.* at 563. In *Barroso*, the Supreme Court held "that *in camera* review of a witness's psychotherapy records is authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." *Id.* at 564.

Amicus Curiae BOP contends that this threshold was not met in this case. It is important to remember that the BOP had received a subpoena directing it to divulge any information it had concerning complaints made against Grider and/or Grider Drug, but it did not produce that information to Grider. Rather, when the court subsequently discovered that the BOP had not disclosed this information, despite the subpoena and court

order stating that Grider could subpoena the BOP for such information, the BOP responded that nothing was written down when the complaint was originally made, and that when a pharmacist decides to participate in the PRN, the BOP's opinion is that it does not have any "official" knowledge of that person and their violations of law.

The BOP now contends that the trial court erred in concluding that the BOP intentionally hid information concerning Complainant and his PRN participation from Grider. However, on the Friday before trial, the parties informed the circuit court that Complainant had a history of substance abuse and that he was a participant in the PRN. The court ordered a continuance of the hearing until later that day, and the court informed the Commonwealth that Steve Hart from the BOP was to attend the afternoon portion of the hearing and testify on these matters. Then, during a subsequent hearing attended by counsel for the BOP, the circuit court informed the BOP that an *in camera* review of the Complainant's records had, in fact, occurred. The BOP has not directed this Court's attention to any evidence in the record to show otherwise. Therefore, Amicus Curiae BOP's claims are not well taken.

member of the jury pool who had been excused for cause told the court that she had worked for Medicaid's claims contractor, and she had recently been asked to identify which drugs from the indictment's time frame had required pre-authorization. She could not recall which drugs had required pre-authorization due to the amount of time that had passed. The court found that this was "another indicator of the difficulty of ascertaining the alleged regulatory violations that the government asserted in its opening statement, . . . and the failure to clearly allege those violations in the Indictment or the bill of particulars, puts the defendant at an extremely unfair disadvantage." Thus, the court held that Grider had been deprived of a fair opportunity to defend himself, and that Grider "should not be required to shoot at a moving target."

Kentucky Rule of Criminal Procedure (RCr) 6.12 provides: "An indictment . . . shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits." In the present case, the circuit court dismissed the indictment, due in part to the Commonwealth's failure to charge Grider with the alleged violation of the Medicaid regulation concerning pre-authorization for reimbursement. The court noted that the Commonwealth had only charged Grider with "obtaining payment for services that were not rendered," and that the charges against Grider were very different from "the failure to obtain pre-approval for dispensing a covered medication," which the Commonwealth stated during the in-chambers hearing that followed opening arguments was a significant component of its charges against Grider.

The circuit court did not err in finding that this defect in the indictment prejudiced the substantial rights of the defendant, both because Grider had not been informed before the start of trial that he would have to defend against the allegations regarding the failure to obtain pre-authorization, and because even the member of the jury pool who worked for a Medicaid contractor and who recently had looked into which drugs required pre-authorization during the time period covered by the indictment could not recall which drugs required pre-authorization due to the amount of time that had elapsed. If someone who works in the Medicaid reimbursement field cannot state for certain which drugs required pre-authorization during the time period covered by the indictment, then the defendant certainly cannot be expected to be able to conduct an adequate investigation after trial has already begun in order to properly defend himself against such a complex and new allegation. Moreover, because the Commonwealth informed the circuit court that the violation of the pre-authorization regulation helped form the basis for its charges against Grider, the court properly dismissed the indictment due to the defect of failing to charge this violation, which resulted in prejudice to Grider's substantial rights.

We further note that the Commonwealth did not seek amendment of the indictment in the circuit court. Even if it had, as discussed *supra*, amendment of the indictment would have been improper because any such amendment would have resulted in prejudice to Grider. *See* RCr 6.16.

■ Thus, we must now turn to the Commonwealth's argument that the circuit court improperly dismissed the indictment with prejudice, as opposed to without prejudice. The Commonwealth contends that "the trial court considered sufficiency of

the evidence in its order when it questioned whether actions that 'saved the taxpayers' money' could constitute fraud, and when it considered 'the difficulty of ascertaining the alleged regulatory violations.' " The Commonwealth misconstrues the circuit court's order. Specifically, the circuit court did not weigh the sufficiency of the evidence in deciding to dismiss the indictment. First, the circuit court mentioned that the evidence could be construed to show that Grider's actions saved taxpayers' money, thus negating any fraudulent intent, for the purpose of explaining that the spreadsheet evidence was exculpatory, and that it should have been produced to Grider long before trial, to ensure that his due process rights were protected.

Second, the court mentioned the difficulty of ascertaining the alleged regulatory violations in the course of explaining that the Commonwealth should have informed Grider either by charging him in the indictment or by informing him through the bill of particulars that the charges against him were based upon the alleged failure to obtain pre-authorization from Medicaid. If Grider had been informed earlier of this allegation, he would have had time to prepare to defend himself against it at trial. Additionally, he would have had time to learn about the difficulty in determining which drugs required pre-authorization, which may have been exculpatory in nature. Thus, the circuit court did not weigh the sufficiency of the evidence when it mentioned the difficulty of ascertaining the alleged regulatory violations; rather, it mentioned this to explain why the Commonwealth's failure to charge the alleged pre-authorization violation in the indictment or to inform Grider through the bill of particulars that he would have to defend against this allegation was a threat to Grider's due process rights and to his rights to present a defense and to the effective assistance of trial counsel.

As we previously mentioned, "subject to rare exceptions usually related to a defendant's claim of a denial of the right to a speedy trial, the trial judge has no authority, absent consent of the Commonwealth's attorney, to dismiss, amend, or file away *before trial* a prosecution based on a good indictment." *Gibson*, 291 S.W.3d at 690 (internal quotation marks omitted) (emphasis added). However, in the present case, the indictment was not dismissed before trial, but after trial had begun.

> There are a variety of situations which may result in a dismissal of a criminal case under circumstances which, against the wishes of the Commonwealth, preclude further adjudication and are, in effect, a dismissal "with prejudice." These include the violations of the right to a speedy trial and the mistrials that occur after jeopardy attaches.

*Gibson*, 291 S.W.3d at 690.

 In the present case, the court declared a mistrial after the jury was impaneled and sworn and following opening arguments. The court subsequently entered its order dismissing the indictment. Jeopardy attaches when a jury is impaneled and sworn. *See Cardine v. Commonwealth*, 283 S.W.3d 641, 646–47 (Ky.2009). The Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution "guarantee that no person shall be tried twice for the same offense." *Commonwealth v. Scott*, 12 S.W.3d 682, 684 (Ky.2000). "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury or contemporaneously-impaneled alternates is barred unless 1) there is a 'manifest necessity' for a mistrial or 2) the defendant either requests or consents to a mistrial." *Cardine*, 283 S.W.3d at 647 (internal quotation marks omitted). "Manifest necessity has been described as an

urgent or real necessity. The propriety of granting a mistrial is determined on a case by case basis." *Scott,* 12 S.W.3d at 684 (internal quotation marks and footnote omitted). Even if a criminal defendant successfully moves for a mistrial, under the United States Constitution, he may still "invoke the bar of double jeopardy in a second effort to try" him if "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416, 427 (1982). This principle also applies under the Kentucky Constitution's Double Jeopardy Clause. *See Stamps v. Commonwealth,* 648 S.W.2d 868, 869 (Ky.1983). Further, under Kentucky law, a " 'party seeking to prevent his retrial upon double jeopardy grounds must show that the conduct giving rise to the order of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court.' " *Terry v. Commonwealth,* 153 S.W.3d 794, 804 (Ky.2005) (internal quotation marks and citations omitted).

■ Although the Commonwealth contends that any retrial of Grider is not barred by double jeopardy because Grider allegedly waited until the jury was sworn to move for a dismissal of the indictment on the ground that the Commonwealth had failed to disclose exculpatory evidence, the Commonwealth's argument is misplaced. While it is true that Grider sought dismissal of the indictment on that basis after the jury was impaneled and sworn, the circuit court dismissed the indictment due in part to the Commonwealth's disclosure—after the jury had been sworn and the trial begun—that the charges against Grider were based on his alleged failure to obtain pre-authorization for reimbursement from Medicaid. Because the circuit court found

that this resulted in Grider being "deprived of a fair opportunity to defend himself against the government's charges," the indictment was dismissed.

> The attachment of jeopardy merely begins the inquiry as to whether the Double Jeopardy Clause of the Fifth Amendment proscribes a retrial.... When a trial is aborted at the volition of the defendant himself, the considerations are different from those that prevail when the interruption is precipitated by the prosecution or by the trial court sua sponte.... [I]f there is no bad faith and the choice has not been forced upon the defendant, he is not in a position to cry double jeopardy when the trial is relaunched.

*Commonwealth v. Lewis,* 548 S.W.2d 509, 510 (Ky.1977), *abrogation on other grounds recognized by Cardine,* 283 S.W.3d at 646.

In the present case, Grider moved to dismiss the indictment. In support of its argument that the circuit court improperly dismissed the indictment with prejudice, the Commonwealth asserts that the circuit court did not find that the Commonwealth had acted in bad faith. However, the court did find that all of the issues it discussed in its order supported

> dismissal of the indictment because the Defendant has clearly been deprived of a fair opportunity to defend himself against the government's charges. All of these questions could have been reasonably contested in pretrial hearings, or at trial, if the government had provided the information required in advance of trial in compliance with the repeated discovery orders entered by the Court, and the Court's repeated orders directing the filing of a bill of particulars. The defendant should not be required to shoot at a moving target, especially when the government has failed to com-

ply with its discovery obligations. Since the information regarding [Complainant] and the most recent FirstHealth spreadsheets were both provided on the eve of trial, this Court believes that dismissal is the only fair remedy. Any further delay occasioned by the government's failure to comply with the Court's orders would unfairly prejudice the Defendant.

In other words, the decision to move to dismiss the indictment was forced upon Grider. Due to the fact that the jury was impaneled and sworn, the circuit court did not abuse its discretion in dismissing the indictment with prejudice because Grider's retrial is barred by the Double Jeopardy Clause.

We now turn to Grider's motion to dismiss this appeal on the basis that his retrial is barred by the Double Jeopardy Clause. It was necessary to analyze the merits of this appeal to determine whether the dismissal of the indictment with prejudice was proper, and we found that this was proper. Consequently, Grider's motion to dismiss this appeal on the basis that his retrial is barred by the Double Jeopardy Clause is denied as moot.

Accordingly, the order of the Franklin Circuit Court is affirmed and the motion to dismiss this appeal is denied as moot.

ALL CONCUR.